PEOPLE *v.* ROHL.

1. CRIMINAL LAW — CONFESSION — ADMISSIONS — TRIAL — INSTRUCTIONS TO JURY.

   A statement of respondent who was charged with the attempted murder of his divorced wife, made to the prosecutor and other officials while the accused was in jail, not containing, however, any admission of the offense charged, or of connection with it, was not a confession, and it was prejudicial error to refer to it as such in the charge to the jury.

2. SAME—HOMICIDE—ASSAULT WITH INTENT TO MURDER—EVIDENCE.

   Threats made by respondent at a time more than 12 years before the alleged crime, not related thereto, and threats made

by respondent in the presence of his wife against another person of whom he was jealous, were not competent to show intent.

Exceptions before sentence from Macomb; McKay, J. Submitted April 20, 1911. (Docket No. 148.) Decided June 2, 1911.

Emil Rohl was convicted of assault with intent to murder. Reversed.

*Charles H. Hummerich*, Prosecuting Attorney (*Warren S. Stone*, of counsel), for the people.

*O. C. Lungerhausen*, for respondent.

McALVAY, J. Respondent was convicted of the crime of an assault with intent to murder Signe Rohl at Mt. Clemens, in Macomb county, on June 27, 1910. The case is before this court on exceptions before sentence.

Signe Rohl was the divorced wife of respondent. They were married in New York, April 28, 1897. After the marriage they lived in several places, and finally came to Mt. Clemens in 1903. Later they separated, and February 3, 1906, she obtained a divorce in Macomb county on the ground of nonsupport, and was decreed the custody of their daughter Lillian, who was 11 years of age at the time of the assault upon the mother. Respondent was notified of the divorce by her solicitor by letter written February 26, 1906. He came to Mt. Clemens afterwards, and remained until the occurrence of the assault charged. There was evidence showing that he had met her and asked to see the child, which she refused to allow, and also tending to show that his conduct was annoying to her; that she made complaint, and he removed from her neighborhood. Respondent was a professional masseur, born in Sweden, and had been previously married. Signe Rohl followed the same business as respondent, and by her work supported herself and daughter and lived alone with her.

Early in the morning of the day in question, at about 3 o'clock, Mrs. Rohl was awakened by a blow on her head and a pillow put over her head smothering her. A person jumped upon her. She struggled and succeeded in throwing the body off and in the struggle both went out on the floor. She screamed several times. She was then struck a violent blow on the head, crushing in her skull, and again a pillow was put over her head. She remembered no more until she heard her daughter calling, and she managed to get up, strike a light, and get to her telephone to call a physician. A shoemaker's hammer covered with blood was found on the bed by the doctor. Her skull was fractured at the corner of the right eye, from which the brain exuded. She also had a scalp wound on the left side of her head and on the same side a fracture at the point of the jaw. The medical testimony is that she would have died if she had not received prompt attendance. The daughter testified that in the dim light after she had been waked up by her mother's cries and gone towards her room she saw a man running through the room of the size of her father. The mother says that she knew that the person was respondent by the muscles of his arms which she grasped; that she called to him, "Emil, don't murder me." She also said that he was jealous of her, threatened before they were divorced that he would make her crawl yet. A young man at a livery stable gave testimony tending to show that respondent at or near the hour of the assault was going from the direction of Mrs. Rohl's house towards his rooming place. Other evidence tended to show that very small spots of blood were upon some of his wearing apparel. Respondent was arrested at his rooming house soon after 4 o'clock on the morning of the assault. He came downstairs from his room in his nightgown. The officer examined his room. His shoes were dusty, and his shirt collar, cuff, and front had spots on them. Some of these spots were identified as blood spots. The analyst testified that there was not enough to determine that it was human blood.

On account of the nature of the errors claimed, it will be unnecessary to further outline the evidence on the part of the prosecution. That an assault with intent to murder was committed is not in dispute. The respondent denied all knowledge of the assault, and offered proof tending to establish his contention.

While respondent was confined in jail before the trial, he was examined by the prosecutor, in the presence of the chief of police and a stenographer, who took what was said at the time, and has identified the transcript of the notes. The statement was made July 18, 1910. It was the third time he had been examined. Twice the chief of police had already talked with him. It is printed in the record and covers 28 pages. This statement was admitted and read in evidence over the objection of counsel for respondent. The reasons for objection do not appear. In both briefs and upon the oral argument, it was treated as in evidence, and in the charge of the court it is referred to at considerable length as a statement, admissions, and confession. The following excerpt from the charge will indicate that the consideration of what the statement contained was admitted to the jury. The court charged:

" Some evidence has been offered of statements made by respondent shortly after his arrest while in the police station in the city of Mt. Clemens, and I charge you in relation thereto that such statements are to be received with great caution, for besides the danger of misapprehension of witnesses, or the misuse of words, the failure of the party to express his own mind, and the infirmity of memory, it should be recollected that the mind of the prisoner himself is often oppressed by the calamity of his situation, and that he is often influenced by motives of hope or fear to make statements. Subject to these cautions in weighing and receiving them, it is generally considered that deliberate confessions of guilt are among the most effectual proofs in the law. Their value depends on the supposition that they are deliberate and voluntary and on the presumption that a rational being will not make admissions prejudicial to his interests and safety unless urged by the promptings of truth and conscience.

\* \* \* Where they are not made voluntarily but under threats of promise of favor, they are to be entirely disregarded, where made deliberately, intelligently and with understanding on the part of respondent, they are entitled to such weight as you see fit to give them."

The respondent makes the giving of this charge his principal assignment of error. Our examination of this so-called confession satisfies us that it cannot be so considered. In it there is no admission of guilt of the offense charged or of any knowledge of, or connection with, the assault, or circumstances leading up to it. If it had any of the earmarks of a confession, it was not secured under the cautions to respondent usual and necessary to protect him if it was intended to be used as a confession of guilt. Much of this part of the charge quoted was taken from the opinion of this court in *People* v. *Peterson*, 93 Mich. 35 (52 N. W. 1039), and was used in a discussion where it was held that the charge upon the claimed confession was erroneous. We have quoted all of the material part of the charge which contains the portion objected to, for the purpose of making it clear that from the entire charge it is impossible to conclude that the court was not giving the jury to understand that this statement was an admission and a confession. The court was in error in this matter. The question of a confession was not in the case at all, and the charge was therefore not applicable, and was misleading and prejudicial. This statement was not entitled to be considered as substantive evidence. We do not find that the record shows that respondent was cross-examined in regard to it.

Errors are assigned upon the admission of certain testimony for the purpose of showing threats by respondent against Mrs. Rohl, on the ground that such testimony was immaterial, was not rebuttal, and the instances were too remote, and threats shown were not against Mrs. Rohl. The first questions which respondent was permitted to answer over objection were:

"*Q.* Were you jealous of Dr. Collins?

"*Q.* And it was upon the request of your wife that you married her?"

Both related to matters before the marriage in 1897. Neither was connected with the assault. Both were immaterial. The threat proposed to be shown was not made against Mrs. Rohl, but against Dr. Collins. It occurred in 1904 on an occasion when respondent attempted to embrace his wife, which she repulsed, and he said:

"Damn you, I wish I had shot that cur in New York, when I had an opportunity."

It was immaterial. Mrs. Rohl just before the close of the case was recalled, and allowed over objection to testify:

"*Q.* Didn't you marry him under a threat?
"*A.* I did."

Whatever this threat might have been does not appear. It was inadmissible if considered evidence of a threat, because not made at a time and under circumstances as would have a bearing on the issue being tried. *Paul* v. *Bissett*, 121 Mass. 170; 5 Enc. L. & P. pp. 766, 776.

Other claimed errors are assigned. They are of minor importance, and, as the questions will probably not arise on another trial, do not require discussion.

For the errors pointed out, the conviction is set aside, and a new trial is ordered.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.