BODCAW LUMBER COMPANY *v.* GOODE.

Opinion delivered June 25, 1923.

1. DEEDS—RESERVATION IN GRANTING CLAUSE.—Where a reservation or exception from an absolute estate is contained in the granting clause, it must be read in connection with the grant as a limitation thereon, and is not void as being in conflict with the grant, though the rule is otherwise where it is contained in the *habendum* or any subsequent clause of the deed.

2. MINES AND MINERALS—RESERVATION OF MINERAL RIGHTS.—Though. there is a clear distinction between a "reservation," which refers to some new thing issuing out of the thing granted but not *in esse,* and an "exception," which relates to a part of the thing granted, the terms are often used interchangeably, and where the word "reservation" was used when "exception" was intended, the courts will give effect to the intention of the parties, so that a deed of land reserving mineral rights will be construed as excepting them.

3. MINES AND MINERALS—SEPARATE OWNERSHIP.—Minerals in land, including oil and gas, are part of the land until severed, and subject to ownership, separate from the ownership of the surface, and the mineral rights may be the subject of separate sale.

4. MINES AND MINERALS—ADVERSE POSSESSION.—Where the title to minerals is separated from the title to the surface, the statute of limitations does not run against the right to the minerals, unless there is an actual adverse holding which constitutes an invasion of these particular rights; it being insufficient that the surface is possessed by a subsequent grantee under a deed not excepting the minerals.

5. MINES AND MINERALS—REMOVAL WITHIN REASONABLE TIME.—The rule that the owners of timber on another's land must remove same within a reasonable time or lose the right to enter for that purpose, being based upon the impossibility of using the surface so long as the timber remains thereon, does not apply to the ownership of minerals, which does not interfere with the use of the surface, so that no lapse of time impairs the right of the owner of the minerals to enter to remove same.

6. MINES AND MINERALS—FAILURE TO PAY TAXES ON SEPARATE OWNERSHIP.—Failure of the owner of minerals in lands, the surface of which belongs to others, to list same for taxation and to pay taxes thereon did not injure the owner of the surface where the mineral rights were not separately assessed.

Appeal from Columbia Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*Henry Moore, Jr.,* for appellant.

The reservation in the granting clause of the deed of the mineral rights in the land conveyed will be construed to be an exception thereof from the grant to effect the intention of the grantor to carve out and retain all the mineral rights, including oil and gas. 93 Ark. 9; 99 Ark. 247. The reserving clause is not repugnant to

the grant, but only a limitation thereon. 94 Ark. 618; 78 Ark. 230; 112 Ark. 525. The owner of land in fee simple can convey the land to another and reserve to the grantor, or retain, excepting from the grant, the minerals, oil and gas that may be under the surface. 103 Ark. 180; 107 Texas 226; 215 S. W. (Ky.) 80. The Congress of the United States recognized this principle, act approved August 24, 1912, Compiled Statutes, § 4638; also act approved July 17, 1914, 38 Statutes at Large, 309, 310; § 4640-B, Compiled Statutes; 155 U. S. 667; Tiedeman, Real Property, 843. See discussions of question by Hon. T. J. Gaughan before Arkansas Bar Association, 1922 session. Different estates may be created; there may be a severance of the mineral estate from the estate in the lands, which may be accomplished by an exception in a deed or by sale and conveyance. 4 L. R. A. (N. S.) 480; 152 Pa. 286; 18 L. R. A. 706; 141 W. Va. 559, 31 L. R. A. 128; 94 N. Y. 595; 93 Mo. 107, 5 S. W. 605; 93 Va. 332, 24 S. E. 1020; Anderson's Dictionary Law, 667; 2 Rapalge and Lawrence's Law Dictionary, 723; 55 N. Y. 534, 14 Am. Rep. 132; 31 Pa. 427, 78 Am. Dec. 436; 60 L. R. A. 798; 143 Pa. 293, 13 L. R. A. 627, 24 Am. Rep. 544; 233 Pa. St. 540; Ann. Cas. 1913-B. The State of Texas recognizes that there may be a severance of the mineral estate from the estate in the lands. Session Acts 1907, 490, Acts 1917; 150 S. W. 1151. Louisiana likewise, act 31. Acts 1910, and also a statute of our State, C. & M. Digest, § 9856. Oil and gas, like other minerals, belong to the owner of the soil. 28 Texas C. App. 292, 69 S. W. 169; *Neil* v. *Martin,* 75 S. W. 430; 18 R. C. L., § 85; 27 Cyc. 681; Thornton, Law Relating to Oil and Gas, 32, §§ 19, 20, 52; 231 U. S. 353, 34 Sup. Ct. 62, 58 L. ed. 264. Severance may be by conveyance of the mines or minerals only, or by a conveyance of the land with reservation or exception as to the mines or minerals. 20 Am. & Eng. Enc. of Law, 772; 57 W. Va. 278, 50 S. E. 236. It is held that oil and gas have the power of self-transmission, but the later cases hold that

there is no analogy between the moving of these minerals and animals *ferae naturae* in their tendency to wander at will. 177 U. S. 190; 49 N. E. 399; 176 S. W. (Texas) 717; 84 N. E. (Ill.) 46; 75 Pac. (Kan.) 995; 146 S. W. (Ark.) 122; 57 N. E. 912; 95 N. E. 225; 76 N. E. 525; 100 N. E. 681; 104 N. E. 983. The overwhelming weight of authority supports the rule that a fee owner, or the owner of a separate estate in the oil and gas, holds an absolute title to these minerals while in place to the same extent and legal effect as though minerals involved where coal, iron ore, or any other solid mineral. 177 U. S. 190, *supra,* is the leading case in opposition to this rule. 49 N. E. 399; 43 S. W. 355; 27 S. E. 411; 43 W. Va. 286; 28 S. E. 781; 45 W. Va. 806. 32 S. E. 216; Lindley on Mines, § 859-B; 65 W. Va. 636; *Williams* v. *Oil Co.,* 52 W. Va. 181; Thornton, § 619; 62 W. Va. 167, 58 S. E. 915; 63 W. Va. 317, 61 S. E. 307; 166 Mich. 320, 120 N. W. 818; 51 Pa. 375; 57 W. Va. 535, 50 S. E. 603; 41 W. Va. 559; 23 S. E. 664, 56 Am. St. Rep. 884, 31 L. R. A. 128; 115 Minn. 239; 4 L. R. A. (N. S.) 477; 231 U. S. 62, L. ed. Discussion of history of jurisprudence of the oil-producing States on fugacious character of oil and gas. James A. Veasy. April number Michigan Law Review. Concludes oil and gas *in situ* not fugacious, but form as much a part of the realty as iron. coal, sulphur, salt or any other mineral. The Louisiana case, *Frost-Johnson Lumber Co.* v. *Sallings,* 150 La. 756, 91 So. 207, holding contrary to the great weight of authority that mineral rights are not subject to separate grant, is little entitled to favorable consideration here. The exception of the mineral rights, if not valid in perpetuity, should certainly be held effective for a reasonable time. 77 Ark. 116; 127 Ark. 121; 237 U. S. 101; 145 Ark. 310; 148 Ark. 301.

*Joe Joiner,* for appellee.

Oil and gas cannot be owned separate and apart from the land. 103 Ark. 180; 233 Ill. 9; 84 N. E. 53; 130 Pa. 235; 5 L. R. A. 731; 131 Ind. 277, 31 N. E. 59;

53 W. Va. 501, 44 S. E. 433; 1 Thornton on Oil and Gas Law, 43, par. 24; 239 Fed. 933; 177 U. S. 190. The reservation in the deed is repugnant to the grant, and void. 82 Ark. 212; 98 Ark. 570; 118 Ark. 522; 131 Ark. 103; 94 Ark. 618; 195 Ill. 181, 62 N. E. 809; 22 Ky. L. Rep. 814, 64 S. W. 413; 24 Ky. L. Rep. 1364, 70 S. W. 1062; 103 Md. 696, 63 Atl. 965; 214 S. W. (Tex.) 537. 82 Ark. 212 has not been overruled, as contended by appellant, and was cited in 131 Ark. 103. The clause in this deed is a reservation and not an exception. 141 Iowa 438; 99 Ark. 244; 241 Fed. 581. Appellant has lost its right, if any it had, by abandonment. 205 S. W. (Ark.) 111; 169 S. W. (Ark.) 957; 97 Ark. 167; 192 S. W. (Ky.) 79; 225 S. W. (Ark.) 347. Appellant did nothing in all the time, more than 10 years, it claimed to own the mineral rights, to indicate its ownership. It did not have same separately assessed nor pay taxes thereon, as required in C. & M. Digest, 9857, while appellee was assessing and paying taxes on the land which included these minerals. Its claim is barred. C. & M. Digest, 6942; 1 Thornton, Law of Oil and Gas, 77, 111.

McCULLOCH. C. J. This controversy involves the gas, oil and other mineral rights in and under a certain tract of land, containing forty acres, in Columbia County. Appellant. a corporation, formerly owned the land in fee simple, and in the year 1912 it conveyed the land to appellee by warranty deed but the granting clause contained a reservation (or exception) of the oil, gas and other mineral rights. in the following language:

"Reserving to the grantor, its successors and assigns, all of the gas, oil and minerals and mineral rights in and under said land. with the right to prospect for and exploit the same, and use sufficient surface therefor, and the right to lay, maintain and operate pipe lines for oil and gas; and the right to erect, maintain and operate telephone and telegraph lines, with the right reserved to remove any building, machinery, pipe lines or other property erected or placed on said land in connection

therewith; and reserving to said grantor, its successors and assigns, a right-of-way for railroad or tramroad not exceeding one hundred feet in width across said land, if same shall be necessary for, or desired by it, its successors or assigns, such pipe lines for oil and gas and such telephone and telegraph lines and such right-of-way, however, not to infringe upon or interfere with any improvements upon said land without payment of a reasonable amount for damages caused thereby.''

Appellee instituted this action against appellant in the chancery court of Columbia County to cancel the reservation clause in said deed, and to quiet his title. In the complaint he alleged that appellant had not explored this tract of land for oil, gas or other minerals, nor any other land in that county, and that appellant had not paid any taxes on the mineral rights in the land. Appellee also pleaded the statute of limitations in bar of the right of appellant to assert any mineral rights in the land, and also pleaded in his complaint that appellant was barred by laches in not proceeding more expeditiously to explore the land for minerals.

Appellant answered, but the answer really tendered no issue of fact, and attempted to raise questions of law upon the facts pleaded in the complaint. The court sustained a demurrer to the answer, and appellant elected to stand upon it, and the court rendered a final decree in favor of appellee, canceling the reservation clause in the deed, and quieting appellee's title as against any claim of appellant to mineral rights.

It is first contended that the reservation clause is void as being in conflict with the grant. It will be observed, however, that the clause in question is a part of the granting clause of the deed, and must therefore be read in connection with the grant as a limitation thereon, rather than as being in conflict with it. This is the rule where an exception or reservation is found in the granting clause of a deed. *Fletcher* v. *Lyon*, 93 Ark. 5. It is otherwise where the clause attempting to limit

the grant is contained in the *habendum* or any subsequent clause of the deed. *McDill* v. *Meyer,* 94 Ark. 615.

There is another preliminary to the main question in the case with respect to the language of the clause in using the word "reservation," instead of "exception." There is a clear distinction, of course, between a reservation and an exception in a deed, in that there may be a reservation to the grantor of some new thing issuing out of the thing granted but not theretofore *in esse,* whereas an exception relates to a part of the thing granted. These terms are too often used interchangeably, however, to be material, and it always becomes a question to determine what the real intention of the parties was with respect to the thing granted. *Parker* v. *Parker,* 99 Ark. 244. There are many authorities on this subject in other States, and it is uniformly held that where the word "reservation" is used, and it is clear that the intention of the grantor was to create an exception to the grant, the clause will be construed so as to carry out the obvious intention of the parties. Tiedeman, Real Prop. 843; Thornton, Oil & Gas, § 303; 20 Am. & Eng. Ency. of Law, p. 772; *Poston* v. *White,* 57 W. Va. 278.

It is evident from the language used in the present deed that it was the intention of the grantor to carve out and retain all of the mineral rights, including oil and gas. This was clearly and necessarily the intention of the parties, because, treating the word "reserving" in its technical sense, it is wholly inapplicable, for the mineral rights were part of the land, and not a new thing like an ordinary easement, such as a right-of-way, to be reserved. We therefore treat the deed as having properly attempted to create an exception of all mineral rights from the grant and to retain those rights in the grantor.

The real question involved in the case is whether or not mineral rights in and under land can be severed from the fee to the surface and the title in perpetuity be re-

tained by an exception, or whether such an exception, in whatever language it may be couched, amounts to no more than a mere servitude in the form of a license to use the surface for the purpose of enjoying the mineral rights.

The further question arises whether or not, if the exception operates as a retention of the title to the severed mineral rights, enjoyment of those rights can be barred by adverse occupancy of the surface of the land.

There has been a wealth of discussion on the subject whether or not there can be a severance of the surface and mineral rights in land so as to uphold a sale or reservation of the latter, and there is not entire harmony in the discussion, but it appears to us to be in accordance with the great weight of authority to say that there may be such separation, and that mineral rights, even those including gas, a volatile substance and generally referred to as being of a vagrant character and liable to escape, may be the subject-matter of a separate sale or reservation so as to create or reserve a right in perpetuity. That principle was clearly recognized by this court in the case of *Osborn* v. *Arkansas Ter. Oil & Gas Co.,* 103 Ark. 175. This precise question was not involved in that case, but the language of the court was an essential part of the reasoning in determining the question involved. It involved an interpretation of a sale or lease of mineral rights with respect to the distribution of the royalties among different owners. In that case we said:

"It has been said that natural gas is a fluid mineral substance, subterraneous in its origin, possessing in a restricted degree some of the properties of underground waters, and resembling water in some of its habits. It is found in the land, but has the power to escape without the volition of the owner of the land. It has, however, been well settled, we think, that natural gas is a mineral. and while in place of any particular land it is a part of the land itself. Until severed from the realty, it is as

much a part of it as coal or stone; and, so long as it remains under the ground, it is treated as a part of the realty itself under the surface of which it lies. It therefore belongs to the owner of the land in which it is found, and, as long as it remains in the particular tract of land, the owner of the surface is the owner of the gas beneath it. It has been uniformly held that conveyances of gas in its natural state in the land require all the formalities of a conveyance of any other interest in the same real estate, and that the ownership of the gas passes to the grantee of the land itself, in event the right to the same is not expressly reserved in the deed conveying the land.''

In two of our neighboring States (Texas and Oklahoma), where there are extensive gas and oil fields, it has been decided by the courts of last resort in accordance with the views now expressed. The Supreme Court of Texas, in the case of *Texas Company* v. *Daugherty,* 107 Tex. 26 (quoting from the syllabus), held:

''The fact that oil and gas, from their fluid and fugitive character while in the ground, are capable of escaping from its owner or of being drawn off by an adjoining proprietor, while qualifying the title in them held by the owner of the soil, does not prevent them from being treated as minerals and a part of the realty, capable, as such, of transfer and separate ownership, the purchaser assuming the risk of reducing them to possession and absolute ownership.''

The Chief Justice, speaking for the court in that case, after discussing the peculiar attributes of oil and gas as minerals and the comparison made by some authorities of those minerals to things *ferae naturae,* said:

''The possibility of the escape of the oil and gas from beneath the land before being finally brought within actual control may be recognized, as may also their incapability of absolute ownership, in the sense of positive possession, until so subjected. But, nevertheless, while

they are in the ground, they constitute a property interest. If so, what is the nature of it in the hands of the original owner? It embraces necessarily the privilege or right to take them from the ground. But is that its extent, or sole character? While they lie within the ground as a part of the realty, is the ownership of the realty to be denominated, as to them, a mere license to appropriate, as distinguished from an absolute property right in the *corpus* of the land? With the land itself capable of absolute ownership, everything within it in the nature of a mineral is likewise capable of ownership so long as it constitutes a part of it. If these minerals are a part of the realty while in place, as undoubtedly they are, upon what principle can the ownership of the property interest which they constitute while they are beneath or within the land, be other than the ownership of an interest in the realty?''

The Supreme Court of Oklahoma has held in several cases that mineral rights may be severed so as to be the subject of a conveyance or an exception in a grant, that the title to that extent may be conveyed or retained, and that adverse occupancy of the surface for the statutory period of limitation does not bar the right to separate enjoyment of such mineral rights. *Barker* v. *Land Co.,* 64 Okla. 249, L. R. A. 1918-A, 487; *Ramey* v. *Stephney,* (Okla.) 173 Pac. 72; *Rich* v. *Donaghey* (Okla.), 177 Pac. 86.

In *Rich* v. *Donaghey, supra,* the Oklahoma court said:

''But, with respect to such oil and gas, they had certain rights designated by the same courts as a qualified ownership thereof, but which may be more accurately stated as exclusive right, subject to legislative control against waste and the like, to erect structures on the surface of their land, and explore therefor by drilling wells through the underlying strata, and to take therefrom and reduce to possession, and thus acquire absolute title as personal property to such as might be found and obtained

thereby. This right is the proper subject of sale, and may be granted or reserved."

In the present case we are not dealing with the question of merely a gas lease and the effect of a gas lease, and we express no opinion on that subject, so far as the question in this case is concerned, further than to refer to cases like *Mansfield Gas Co.* v. *Alexander,* 97 Ark. 167, and cases following it, where we held that, in the case of a mere lease for the purpose of exploring for gas and the production of same, there could be an abandonment of the rights unless work began within a reasonable time. There are several other cases, which it is unnecessary to cite, in which we have dealt with the question of gas leases, or at least what were instruments of writing which were conceded to be gas leases, but in the present case we deal solely with what is undeniably a conveyance with the intention to introduce an exception which would carve out and retain the mineral rights in perpetuity.

The Supreme Court of Louisiana has decided contrary to the views we now express and those expressed by the Oklahoma and Texas courts. *Frost-Johnson Lumber Co.* v. *Sallings,* 150 La. 756, 91 So. 207. The opinion of the Louisiana court is not only instructive as an elaborate discussion of the subject, but it is very interesting because of the fact that the court made two changes in its decision, first holding that oil and gas rights could not be severed so as to constitute a separate sale, and on rehearing it was decided to the contrary, but on a second rehearing the court returned to its original view and held that a grant or reservation of oil and gas "carried only the right to extract such minerals from the soil;" that the right granted or reserved in such case is a servitude, which is lost by non-user for a period of ten years, in accordance with the terms of a governing local statute with reference to chattel interests and with reference to the duration of such servitude. On the last rehearing the court based its conclusion on what was conceived to be a

rule of property established by a long line of decisions in that State, though the majority opinion declared that those cases were in harmony with the weight of authority in other States. There was a dissenting opinion by the minority, holding, as we do, that such mineral rights are subject to separate grant.

We are of the opinion that the great weight of authority supports the view that mineral rights are subject to separation from the surface rights so as to be the subject of separate sale. What we think is the prevailing rule is stated in 18 R. C. L. p. 1175, as follows:

"The severance of a mine and the surface of lands may be accomplished by a conveyance of the mines and minerals, or by a conveyance of the land with a reservation or exception as to the mines and minerals. There is no substantial difference between these two methods in the result accomplished; for a reservation will be construed as an exception where there is the plain intent, and the grantor will retain himself a fee simple estate in the portion served. And so the fact that, subsequent to the severance of the minerals from the surface estate, a conveyance of the land is made in which no reservations or exceptions of the minerals are set forth, does not extinguish the rights of the mineral owner nor vest any of the mineral rights in the grantee of such a conveyance. Either a grant or exception of 'minerals' will include all inorganic substances which can be taken from the land, and, to restrict the meaning of the term, there must be qualifying words or language evincing that the parties contemplated something less general than all substances legally cognizable as minerals."

Another text-writer on this subject (Thornton on the Law of Oil & Gas,( vol. 1, § 342) states the rule as follows:

"A reservation or exception of all the mineral in a tract conveyed is a separation of the estate in the mineral from the estate in the surface. 'A reservation of minerals and mining rights is construed as is an actual grant

thereof.' 'A reservation of mineral and mining rights from a grant of the estate, followed by a grant to another of all that which was first reserved, vests in the second grantee an estate as broad as if the entire estate had first been granted to him with a reservation of the surface.' Of course, what is true of a reservation is also true of an exception. In case of either a reservation or an exception, the grantor has a right to enter on the surface with all the usual necessary appliances, to remove the mineral, without any express authority reserved to that effect. In case of a reservation of minerals, such mineral descends to the grantor's heirs.''

The same writer states the rule to be that oil and gas are included within the term "minerals," though that question is not involved here, inasmuch as the exception in the deed before us expressly includes oil and gas. There are too many authorities on this subject to justify a citation of them all, but we find that the weight of authority supports our contention, and the following cases are cited: *Scott* v. *Laws*, 185 Ky. 440, 13  A. L. R. 369; *Crowe* v. *Atkinson*, 85 Kas. 357, 25 Ann. Cas. 1196; *Hyde* v. *Raney*, 233 Pa. St. 540,  27 Ann. Cas. 726; *Moore* v. *Griffin*, 72 Kan. 164, 4 L. R. A. (N. S.) 475; *Murray* v. *Allred*, 100 Tenn. 100, 39 L. R. A. 249; *Northcut* v. *Church*, 135 Tenn. 541, Ann. Cas. 1918-B, 545; *Gill* v. *Fletcher*, 74 Ohio St. 295; *Lovelace* v. *Southwestern Pet. Co.* (Circuit Court of Appeals, 6th Circuit) 267 Fed. 513; *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317; *Weaver* v. *Richards*, 166 Mich. 320; *Buck* v. *Walker*, 116 Minn. 239.

Most of the cases which declare what we think it is correct to term the minority rule make an exception as to gas, and seem to be influenced by the character of that fluid, and hold that it is of such a vagrant nature that it cannot be the subject of absolute ownership. This seems to be the fact that influenced the Supreme Court of the United States in the case of *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190, applying the law of Indiana as declared by the Supreme Court of that State.

According to many writers on this subject, the view most generally entertained by geologists at present is that gas and oil are not of a vagrant character and do not migrate, but maintain their *situs* until they are drawn out or expel themselves by pressure through artificial openings in the surface, and the tendency of later decisions is to hold that oil and gas, while in place and before being drawn out by artificial openings, are as much a part of the realty as fixed minerals, such as coal or iron.

Our conclusion on this subject is that the majority rule is sound, and that it works out a more definite result than the rule that mineral rights cannot be separated and that a conveyance thereof merely creates a servitude. It necessarily follows, from the adoption of this view, that the separate title to the minerals is retained in perpetuity and that the statute of limitations does not run against these rights unless there is an actual adverse holding which constitutes an invasion of these particular rights. Such is the unanimous view in all the authorities which hold that there is a right of separation and separate conveyance. This subject is thoroughly discussed in the Tennessee cases cited above, also in the case of *Scott* v. *Laws, supra,* and in that case note in 13 A. L. R., and there is little left to be said on the subject. The rule of those authorities is that the title to minerals beneath the surface is not lost by nonuser nor by adverse occupancy of the owner of the surface under the same claim of title, and that the statute can only be set in motion by an adverse use of the mineral rights, persisted in and continued for the statutory period.

As presenting an analogous question, our attention is called to the case of *Liston* v. *Chapman & Dewey Land Co.* 77 Ark. 116, where we held that a deed to standing timber which specifies no time for removal "conveys to the grantee an estate in the timber which runs with the land, and goes on forever, but that the right to enter upon the land for removing the timber exists for only a reasonable time after the execution of the deed, and that, if

the grantee thereafter enters upon the land to remove his own timber, he will be guilty of trespass.'' It is insisted that, in order to be consistent, we should follow that rule with respect to minerals. We think, however, there is a broad distinction between a sale of timber and mineral rights, for the use of the former necessarily creates a burden upon the owner of the surface which is not consistent with use by the latter, whereas the use of the surface for mining purposes is only incidental and does not necessarily impair, to a serious extent, the enjoyment of the surface rights. In the Liston case, *supra,* we expressly recognized the anomaly and apparent contradictions in that phase of the law with reference to the absolute title to the timber and yet the requirements that the right thereunder must be exhausted within a reasonable time, but we have no hesitancy in saying that the reason for that rule as applied to the removal of timber has no application to the enjoyment of mineral rights where there is no interference with the enjoyment of surface rights during the period of delay. Since there was an independent and separate right to the minerals, no lapse of time would impair the continuance of the right or bar its enjoyment on account of laches.

In the complaint it is alleged, as grounds for the application of the doctrine of laches. that appellant had not paid taxes on the land, but the answer is that appellant was not required to pay taxes on the land unless there was a separate assessment of the mineral rights, and the owner of the surface rights suffered no injury by the failure of the owner of the mineral rights to separately pay taxes.

Counsel for appellee also discuss the question of public policy involved in the separation of mineral rights from surface rights, but we perceive no question of public policy involved, in the absence of an express statute declaring such policy.

The decree of the chancery court, which is in direct conflict with the law as now declared, is reversed, and the cause is remanded, with directions to dismiss the complaint of appellee for want of equity.