**YOSS, Plaintiff, v MARKLEY, Defendant.**

Common Pleas, Tuscarawas County.

No. 27840. Decided July 31, 1946.

218

Joseph C. Mitchell, New Philadelphia, for plaintiffs.
Fisher, Limbach, Smith and Renner, New Philadelphia, for defendant.

No appeal taken.

## OPINION

By LAMNECK, J.

This is an action to quiet title to certain lands consisting of approximately 20.3 acres located in Sandy Township in this county. The plaintiffs seek to have a fee simple title adjudged in their favor with no reservations or exceptions as against the defendant who claims to be the owner of all the "stone coal or other coal" under said lands.

It is claimed by the defendant that the coal rights were severed from the land in January, 1855, by a warranty deed

from John George Broadbeck and his wife Mary Brodbeck, to James Kelly which is recorded in Volume 36 at Page 485 in the Deed Records of this county. The granting clause of this deed reads as follows: "Give, grant, bargain, sell and confirm to him the said James Kelly and his heirs and assigns for-ever, all the stone coal or other coal on or under" etc. The habendum clause in said deed reads as follows: "To have and to hold the above granted and bargained premises, with the appurtenances, unto him the said James Kelly his heirs and assigns, to them their own proper use and behoof."

It is shown by the evidence introduced in this case that thereafter the stone coal and other coal in and under the land involved in this case were conveyed by proper deeds of conveyance on several occasions prior to and including the quit claim deed by James Mason and wife to The Tuscarawas Coal and Iron Company on April 29, 1865.

The Tuscarawas Coal and Iron Company made a warran-ty deed to the Tuscarawas Mineral Land Company on April 17, 1908, of "all lands now owned by said grantor in Tuscara-was County, Ohio, and also all right, title and interest of every kind and description in real estate located in said county and state or elsewhere including mineral rights, easements and leasehold estates and also all property of every kind, charac-ter and description wherever located."

Under date of June 24, 1931, the Tuscarawas Mineral Land Company made a quit claim deed to George J. Markley of "all other mineral and oil and gas rights owned by said grantor wheresoever situated in Tuscarawas County, Ohio."

Under date of November 21, 1932, the Tuscarawas Mineral Land Company made another quit claim deed to George J. Markley of "also all other lands and mineral rights owned by us anywhere in Tuscarawas County, including all privileges, easements and every other right vested in us."

Under date of November 21, 1932 the Tuscarawas Mineral Land Company made another quit claim deed to George J. Markley of "also all other lands and mineral rights owned by us anywhere in Tuscarawas County, including all privil-eges, easements and every other right vested in us."

George J. Markley died testate on January 21, 1938, and the defendant herein, his wife, was appointed executrix of his estate.

The coal under the land involved in this case was not inventoried as part of the estate of George J. Markley nor was

it ever transferred by Certificate of Transfer to anyone.

Neither was said coal specifically devised under said George J. Markley's will, but item 8 of said will reads in part as follows: "All the rest, residue and remainder of my property and estate, both real and personal, of whatever kind and description and wheresoever situate that I may own at the time of my decease, or of which I may have the right to dispose * * * * * * I give, devise and bequeath to my beloved wife, Elizabeth L. Markley, she to have and hold the same absolutely and in fee simple."

Under date of January—,1938, the defendant as executrix of the estate of George J. Markley, deceased, made a deed to herself of "also all lands and mineral rights in Tuscarawas County,. Ohio, whether legal or equitable of which George J. Markley died seized and which the said George J. Markley received title thereto from The Tuscarawas Mineral Land Company, together with and including all the privileges, easements and every other right vested in George J. Markley."

When John G. Brodbeck's administrator conveyed the land involved in this case to Benjamin Brodbeck on October 31, 1874, it was subject to the coal right of James Kelly. All of the conveyances of said land since said time were subject to said coal rights.

The warranty deed of William Finlayson to the plaintiff, Lewis Yoss dated January 7, 1929, contains the following: "subject, however, to the mineral rights and privileges of James Kelly, his heirs and assigns to the stone coal underlying said premises."

Subsequent to this deed the plaintiff, Lewis Yoss, conveyed a one-half interest in the land involved in this case to his wife, Mary Yoss, the other plaintiff in this case.

It is well settled that the surface of the land and the minerals underlying it may belong to different owners. The ownership of the minerals after severance is to all intents and purposes the same as the ownership of the land and is attended with all the attributes and incidents peculiar thereto. Each stratum or kind of minerals in turn may be the subject of a grant, and there may be as many different owners of the minerals as there are different kinds or strata. Severance of the minerals may be accomplished by a conveyance of the minerals only, or by a conveyance of the land with a reservation or exception as to the minerals. **Burgner v Humphrey, 41 Oh St 340; Gill v Fletcher, 74 Oh St 295, 78 N. E. 433;**

Thompson on Real Property, Vol. 1, Sections 88 and 90, and Vol. 10, Section 5557.

All of the deeds of the "stone coal" to the defendant's predecessors in record title contain proper granting and habendum clauses. While some question might be raised as to the propriety of the defendant as executrix making a deed to herself, such irregularity is removed by force of the will of her husband in naming her a residuary devisee. A number of the deeds of the defendant's predecessors in title contain no specific description by metes and bounds of the land involved in this case. Under the weight of authority a deed is not defective or void for want of a sufficient description if the description given would include the property intended to be conveyed. Thus deeds which describe the property conveyed as all the real estate belonging to the grantor, all the interest of the grantor in designated sections, all his real property in a certain city or town or all his property in a certain county, are generally effective. 16 Amer. Jur. Page 591, Sec. 272.

Since the defendant has a proper record title by severance of the "stone coal and other coal" underlying the land involved in this action, it becomes material to examine the claim of the plaintiffs that the defendant and her predecessors in title lost their title by adverse possession. The plaintiffs have been residing on this property for more than twenty-one years, first by virtue of a land contract and later by virtue of the warranty deed heretofore mentioned herein from William Finlayson to Lewis Yoss dated January 7, 1929. The plaintiffs contend that this occupancy of the land for over twenty-one years, the nonuse of the property by the defendant, and her predecessors in title, for over twenty-one years, and the omission of the coal from the tax duplicate is sufficient to constitute adverse possession.

Since none of the plaintiffs' predecessors in title since 1855 had title to the coal in question in this case, and the deeds to them and their predecessors in title were subject to coalrights, the owners of the surface and the owners of the coal each had a separate estate carved out of the fee.

Minerals which have been severed from the title to the surface may be acquired by adverse possession, but this can take place only when the possession is actual, continuous, open, notorious and hostile. It cannot be accomplished by secret trespass upon the owner's rights and it has been held in many cases that where there has been a severance of the minerals

from the surface, neither the owner of the surface nor the owner of the minerals can claim the other's estate merely by force of the possession of his own estate. Neither does the owner of the minerals lose his right by mere nonuse. His title can only be defeated by acts which actually take the minerals out of his possession. **Gill v Fletcher, 74 Oh St 295, 78 N. E. 433.** Where minerals under lands have been conveyed and severed from the surface, the owner of the surface holds possession of the minerals as trustee for the grantee of the minerals, and to cause the statute of limitations to run against such grantee, the owner of the surface must repudiate the trust and give the grantee notice thereof, or take actual possession of the minerals with the knowledge of the grantee by actual mining operations. Thompson on Real Property, Vol. 10, Sec. 5559.

The evidence in this case shows that the coal involved in this case has not been separately taxed for many years. If minerals have been severed from the surface of land by conveyance, exception or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes on the actual present value of the portion owned by him. But the failure of the owners of mineral rights, after severance from the surface ownership, to cause the same to be listed and to pay taxes thereon, or if taxing officials consider such mineral rights of no taxable value or fail to levy taxes thereon, such situations will not bar the owner of the mineral rights from exercising his rights of ownership. Thompson on Real Property, Vol. 10, Sec. 5602: Bodcaw v Goode, 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578; Claybrook v Barnes, 67 A. L. R. 1436.

If the surface of the land in question in this case is listed too high for taxation purposes, the owner has an adequate remedy provided by law to have the valuation reduced. The fact that taxing authorities failed to levy taxes against a separate estate carved out of the same fee, which is a matter of record, will not give any additional property right to the owner of another separate estate in the same fee.

From the foregoing the Court concludes that there has been no open, unequivocal, exclusive and adverse possession shown in this case as would cause the defendant to lose her title to the "stone coal or other coal" under the land described in the petition. Judgment accordingly. Exceptions.