### DIERKS LUMBER & COAL CO. v. MEYER et ux.

Civ. No. 389.

United States District Court
W. D. Arkansas, Hot Springs Division.

June 27, 1949.

Cooper B. Land (of Wootton, Land & Matthews), Hot Springs, Ark., Carl E. Enggas and John J. Hasburgh (of Watson, Ess, Whittaker, Marshall & Enggas), Kansas City, Mo., for plaintiff.

C. T. Cotham, Hot Springs, Ark., Glenn F. Walther, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

The plaintiff filed its complaint for a declaratory judgment on December 14, 1948, alleging that on June 6, 1940, the defendants conveyed to Noah Nooner, C. W. Wright, Marshall Braughton and John Braughton by warranty deed all of Section 36 in Township 2 South, Range 18 West, except the N½ of the SW¼ of the NE¼ containing 620 acres in Garland County, Arkansas; that the grantees of the defendants on July 18, 1942, conveyed the land to the plaintiff by general warranty deed containing no reservation or exception and, under the terms of said deed to the plaintiff, it acquired a fee-simple title in and to all of said land; that on or about July 1, 1947, the plaintiff discovered upon the land certain deposits of a substance commonly known as whetstone and that the defendants, after being apprised of such discovery by the plaintiff, had notified the plaintiff of their claim of title to one-half of said whetstone deposits under a reservation contained in the deed of June 6, 1940, executed by defendants to the said Noah Nooner et al.

That the plaintiff in fact acquired full and complete title to the land under the deed of July 8, 1942, but that the defendants refused to recognize plaintiff's title to said lands and the minerals, stone and other substances contained on and beneath said lands, and particularly the whetstone deposits contained upon said land.

The prayer of the complaint is (1) that the plaintiff be declared to have acquired full title to the land and in particular title to all whetstone deposits discovered upon the said land, (2) that even though the defendants be adjudged to be possessed of certain rights in particular minerals contained in said property that the defendants

are not possessed of any rights whatsoever with regard to whetstone deposits upon said land, (3) that if the defendants are adjudged to be possessed of certain rights with regard to whetstone deposits that such rights are incorporeal and consist merely of an interest in one-half of the net proceeds derived from the sale of the whetstone mined and processed by the defendants with the consent of the plaintiff, and (4) that if the defendants are adjudged to be the owners of any rights in said whetstone deposits that they are only the owners of one-half of the proceeds derived from the sale of said whetstone by the plaintiff and that such rights do not affect in any way plaintiff's title to said whetstone deposits or to the exclusive nature of the plaintiff's rights to mine and control the sale of said whetstone deposits.

On January 3, 1949, the defendants filed a motion to dismiss and to strike certain portions of the complaint, which motion was on January 17, 1949, denied.

On January 25, 1949, the defendants filed their answer in which they denied that the plaintiff is the owner of the full and complete title to the land or to the minerals thereon and thereunder and that, "they are the owners of an undivided one-half interest in and to all the minerals located on or under the land described in the complaint of the plaintiff with the right to enter upon said land and to excavate such minerals and to dispose of any such minerals at the market price and to render one-half of the net proceeds to the plaintiff; or, to share in one-half of the net proceeds in the event the plaintiff should enter upon the land and excavate and sell said whetstone or any other mineral."

The defendants ask that a declaratory judgment be entered adjudging them to be the owners of an undivided one-half interest in and to all the minerals located on or under the land described, with the right to enter upon said lands and to excavate such minerals and to dispose of such minerals at the market price and to render one-half of the net proceeds to the plaintiff, or to share in one-half of the net proceeds in the event that the plaintiff should mine said minerals.

On February 2, 1949, the defendants filed an amended answer which in no wise altered the issues but prayed in said amended answer that the Court appoint commissioners to determine if the rights of the parties can be partitioned without material injury to their respective rights and, if it be found that such partition cannot be had without material injury, that the said mineral rights be sold and the proceeds be divided among said parties according to their respective rights after payment of the costs of sale, together with such other declaratory relief as to the Court might seem just and proper.

The cause proceeded to trial to the Court without the intervention of a jury on June 1, 1949, and at the conclusion of the introduction of the testimony the Court directed that the respective parties file written briefs in support of their contentions, which briefs have been filed and fully considered by the Court along with the pleadings and all of the testimony and requested findings of fact and conclusions of law submitted by plaintiff, from all of which the Court now makes and files its formal findings of fact and conclusions of law, separately stated.

### Findings of Fact

1.

The plaintiff, Dierks Lumber & Coal Company, is a corporation organized and existing under the laws of the State of Delaware and is duly authorized to engage in business in the State of Arkansas.

The defendants, Harry Meyer and Mary Meyer, his wife, are citizens and residents of the State of Arkansas.

The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.00.

2.

That on and before June 6, 1940, the defendants were the owners of all of Section 36, Township 2 South, Range 18 West, in Garland County, Arkansas, except the N½ of the SW¼ of the NE¼ thereof, and on said date the defendants conveyed the land to Noah Nooner, C. W. Wright, Marshall Braughton and John Braughton, partners engaged in the operation of a saw

mill and wood manufacturing plant. The said deed contained the following granting clause:

"That in consideration of the sum of $10.00 and other good and valuable considerations paid do hereby grant, bargain, sell and convey unto the said Noah Nooner, C. W. Wright, Marshall Braughton and John Braughton, partners composing the Wright, Braughton Lumber Company, and unto their heirs and assigns forever, reserving unto the grantors one-half of the mineral rights therein the following described lands situated in Garland County, Arkansas, to-wit:

"All of Section 36, Township 2 South, Range 18 West, except the N½ of the SW¼ of the NE¼ thereof, containing 620 acres."

The said deed was duly filed for record in the Deed Records of Garland County and was on record at the time the grantees therein sold and conveyed the land to the plaintiff.

### 3.

On July 18, 1942, the grantees in said deed, the Wright, Braughton Lumber Company, a partnership, by general warranty deed in due form and properly acknowledged conveyed the lands to the plaintiff without in any manner reserving one-half of the mineral rights and without any reference whatsoever to the reservation of one-half of the mineral rights in the land which appeared in the deed from the defendants to the said Wright, Braughton Lumber Company, a partnership.

### 4.

At the time the defendants conveyed the land to the Wright, Braughton Lumber Company, a partnership, the quarrying or mining of novaculite, commonly called whetstone, was an old and established business in Garland County, Arkansas, in the area of the location of said land, and the said defendants had knowledge at the time of the execution of this deed that the said lands contained deposits of novaculite or whetstone and by the reservation contained in the deed executed by the defendants to the said Wright, Braughton Lumber Company, a partnership, the said de-

fendants intended to reserve one-half of all minerals situated in and upon said land, and they considered and thought novaculite was included in the language used in the reservation.

### 5.

That at the time the deed was executed by the defendants it was the common practice and custom in Garland County, Arkansas, for landowners desiring to reserve ownership in novaculite or whetstone and other minerals to specifically reserve and/or except therefrom such interest together with the right of ingress and egress to and from the land for the purpose of mining or quarrying such whetstone and minerals.

The plaintiff introduced eleven deeds that had been executed by other landowner between the dates of January 4, 1910, and May 14, 1947, in which the right of ingress and egress was specifically reserved and/or excepted. In four of the eleven deeds novaculite or whetstone was specifically referred to, and in all eleven stone and quarrying rights were reserved and/or excepted.

### 6.

The testimony did not disclose whether the deed executed by the defendants was prepared by an attorney, but at the time of the execution of the deed there was visible on the land out-croppings of novaculite or whetstone and it was generally believed that the same could be mined or quarried profitably.

### 7.

The plaintiff introduced in evidence several small photographs of mining operations conducted by it or its representatives on the land since it acquired its deed from the Wright, Braughton Lumber Company and all of the said photographs disclose that, in conducting said mining or quarrying operations, it was necessary to dispose of the over-burden and rocks in which the novaculite or whetstone appeared and that, in order to dispose of said over-burden and refuse, it was necessary to pile or place said over-burden and refuse on the land immediately adjoining

the mining or quarrying operations. In other words the usual manner of mining or quarrying novaculite or whetstone is similar to that followed in the strip-mining of coal. The amount of adjacent land required for dumping the over-burden and operation of the quarry depends in each instance on the location of the whetstone, its depth and thickness, and character of the over-burden.

8

There was no evidence introduced by plaintiff relative to the use to which the land was subjected other than it might be inferred that the land was purchased by the plaintiff for the timber thereon, as the primary business of the plaintiff in Garland County, Arkansas, is that of manufacturing timber products. The land is semi-mountainous and not susceptible to profitable use in agriculture. Due to the nature of the land such quarrying operations as may be necessary to save and recover the novaculite would not substantially interfere with the use of the land for the growing of timber, and the amount of the land necessary to be used in such quarrying operations would be inconsequential when compared with the area of the entire tract.

9.

Neither party introduced any direct testimony on the question of whether it is feasible to partition the mineral rights between plaintiff and defendant but, from the testimony of Willie Williams, a practical miner, and C. D. Bosworth, a practical geologist, it does not appear that a partition in kind or an independent and separate sale of the minerals situated in and upon the land could be accomplished in an equitable and fair manner without injury to the rights of the parties as reflected by the deeds hereinbefore referred to.

10.

Novaculite is a very hard, fine grained siliceous rock of sedimentary origin. In minerological chemistry the various silicates are of great importance and form by far the largest class of minerals. A rock of sedimentary origin is formed of fragments of other rock transported from their source and deposited in water. It is sometimes spoken of as a siliceous replacement of dolomitic limestone.

The novaculite rock formed in the area of the land involved herein is regarded generally in commerce as being the best for producing whetstones, hones and devices for the sharpening of surgical instruments and precision appliances.

11.

Heretofore one of the principal outlets for the sale of novaculite or whetstone has been in Europe and particularly in Germany but, at the beginning of World War II, that market was closed so that the demand for novaculite or whetstone during the war years was limited to domestic uses and was therefore not such as to be conducive to the opening of new mines or quarries. Only recently has the world market for such product been reopened.

Discussion

■ The controversy in this case, concerning rights to property with its situs in the State of Arkansas, is to be determined in accordance with the law of this State. Edward Hines Yellow Pine Trustees v. Martin, 268 U.S. 458, 45 S.Ct. 543, 69 L.Ed. 1050; Commissioner of Internal Revenue v. Skaggs, 5 Cir., 122 F.2d 721; Cyclopedia of Federal Procedure, Volume 3, Section 671. Furthermore, as jurisdiction is predicated upon diversity of citizenship and the requisite amount, the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is applicable.

On June 6, 1940, the defendants conveyed the land involved to Noah Nooner, C. W. Wright, Marshall Braughton and John Braughton, partners, d/b/a Wright, Braughton Lumber Company, "reserving unto the grantors one-half of the mineral rights herein".

Is the substance "novaculite" or "whetstone" a mineral within the meaning of a "mineral rights" reservation, and if so, was it the intention of the parties to include the substance in this reservation?

In, construing this, or any, deed the primary consideration is the intention of the parties, and while deeds are to be construed most favorably for the grantee, emphasis is given to the determination of what the grantor meant by the language of the reservation or exception. There is a technical difference in the two terms, unnecessary to set forth here, but the intention of the parties governs regardless of which is used. See: Bodcaw Lumber Company v. Goode, 160 Ark. 48, 254 S.W. 345, 29 A.L.R. 578; Holmes v. Countiss, 195 Ark. 1014, 115 S.W.2d 553; Missouri Pacific Railroad Company, Thompson, Trustee v. Strohacker, 202 Ark. 645, 152 S.W.2d 557.

An exact and all-inclusive definition, applicable at any particular time, of "mineral" as that term is used, in reservations or exceptions of "mineral rights" is impractical, and each determination must be made in the light of the language of the particular instrument together with the circumstances and conditions existing at the time. This appears to be the most effective method of ascertaining and carrying out the true intention of the parties. As stated in Missouri Pacific R. Co. Thompson, Trustee v. Strohacker, supra, 202 Ark. at page 650, 152 S.W.2d at page 561:

"If the reservations had been made at a time when oil and gas production, or explorations, were general, and legal or commercial usage had assumed them to be within the term 'minerals', certainly appellant should prevail."

And, in the same case, 202 Ark. at page 655, 152 S.W.2d at page 563:

"We agree with Chief Justice Gibson of Pennsylvania that 'The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it'. Schuylkill Nav. Co. v. Moore, 2 Whart. Pa.; 477."

As pointed out in Northern Pacific Railway Co. v. Soderberg, 188 U.S. 526, 530, 23 S.Ct. 365; 47 L.Ed. 575, it would be absurd to apply the technical definition of "mineral" to "mineral rights" reservations in deeds, for all land would fall within the definition, with the result that the reservation, being as broad as the grant, would be void. The conclusion of the Court in the Soderberg case, 188 U.S. at page 536, 23 S.Ct. at page 369, "Indeed, we are of opinion that this legislation consists with, rather than opposes, the overwhelming weight of authority to the effect that mineral lands include, not merely metalliferous lands, but all such as are chiefly valuable for their deposits of a mineral character, which are useful in the arts or valuable for purposes of manufacture", appears to be a desirable approach to the matter, and this is true, regardless of the nature of the mining operations employed to remove the substance, whether they be conducted entirely underground or substantially on the surface.

In 1940, and for many years prior thereto, novaculite had a recognized commercial value, particularly in the vicinity of the land involved in the instant case, and mining or quarrying operations to remove the same were being conducted in the area. In fact, the Garland County area is the principal known source of supply of the substance in Arkansas, and possibly in the Nation. Certainly, therefore, in that area land with novaculite deposits was considered valuable by the general public by reason of such deposits, aside from possible agricultural and other uses. It follows therefrom that the substance did have a generally accepted commercial meaning as a "mineral", within the knowledge of the parties to the deed in question, when this reservation was made.

In the opinion of the Court novaculite is, and was in 1940, a "mineral" as that term is used in reservations of "mineral rights", and as used by the defendants in the reservation involved herein.

Plaintiff contends that it was not the intention of the parties to include novaculite within the reservation, and in support of that contention relies upon Carson v. Missouri Pacific Railroad Co., Thompson, Trustee, 212 Ark. 963, 209 S.W.2d 97, 99, 1 A.L.R.2d 784. In the Carson case the Court held that bauxite was not

included within a mineral deposits reservation. The basis of that decision appears to be a conclusion, based upon the facts of the case, that bauxite, admittedly a mineral, was not within the contemplation of the parties when the reservation was made. Several factors contributed to that conclusion, the principal one being the fact that the commercial use of bauxite is of comparatively recent origin in the United States, and its existence in Arkansas in 1892, the effective date of the deed and reservation, was not generally known. The land was purchased for agricultural uses, and at the date of the institution of the litigation had been so used for some fifty years. Also, in arriving at its conclusion, the Court observed that due to the type of mining operations necessary to remove bauxite, it being near the surface of the land, the mining thereof would destroy the land for agricultural uses, and concluded "Such a construction, *under the situation of the parties shown here,* would be an extremely unreasonable one." (Emphasis added.)

As this Court views the holding in the Carson case, the fact that mining of bauxite would have destroyed the land for agricultural uses, was an important factor in the conclusion reached, that "bauxite was not in the contemplation of the parties to the contract when this reservation of mineral rights was made." However, it does not believe that the Carson decision is authority for the proposition that bauxite, admittedly a mineral, can, under no circumstances, be reserved in a conveyance transferring the surface rights.

The accepted method for mining novaculite is apparently similar to that employed for mining bauxite, commonly referred to as "strip-mining". This method naturally interferes with other uses of the land, particularly agricultural. Conceivably, the facts of a particular case could be such that the mining of novaculite would be entirely incompatible with any other use of the land, so as to bring the case within the principle that if the reservation is as broad as the grant it is void. However, such are not the facts of the instant case. This is wild, hilly land, unadaptable to agricultural purposes. Apparently the land was purchased by the Wright, Braughton Lumber Company, and later by the plaintiff, Dierks Lumber and Coal Company, for the timber thereon. It does not sufficiently appear that the mining of novaculite would completely destroy the land for any other use, the only other reasonable use being that of growing commercial timber. But, even though it be assumed that such mining would interfere with other uses of the land, it does not follow that the reservation does not include novaculite. On the other hand, it is included, regardless of the interference, if it appears that it was the intention of the parties to include the substance in the reservation. In other words, the intention of the parties is the primary consideration, and the interference, if any, of the mining operations with the intended use of the land by the grantees, is considered, for whatever it be worth, together with all the circumstances in reaching a determination of that intention. Furthermore, it should be noted that this Court is not concerned in this case with the remedies of the owner of the surface rights against the owner of the mineral rights for undue, excessive or unnecessary interference with such rights.

■ The facts of the instant case reflect that novaculite was commonly known and recognized for its commercial value in the vicinity; that the grantors of the deed, defendants, had actual knowledge of the existence of the substance upon the land in question (defendant, Harry Meyer, testified that novaculite was the particular mineral that he had in mind in reserving the mineral rights); and the nature of the land and its intended use by the grantees was understood by the parties to the deed. It is the opinion of the Court that it was the intention of the parties to include novaculite, previously found to be a "mineral", within the reservation of "mineral rights". In reaching this conclusion the Court is cognizant of the usual, and certainly preferred, manner of reserving an interest in novaculite deposits. See finding of fact No. 5. However, this is only one of many factors entitled to weight in making the determination of intention.

Since the decision of the Supreme Court of Arkansas in Bodcaw Lumber Company v. Goode, supra, it has been the undisputed law of this State that a grantor may retain an estate in fee simple in the minerals, and by a conveyance with an appropriate reservation effectively create separate titles in the surface and mineral rights. As stated in the Bodcaw case [160 Ark. 48, 254 S.W. 349]:

"Our conclusion on this subject is that the majority rule is sound and that it works out a more definite result than the rule that mineral rights cannot be separated and that a conveyance thereof merely creates a servitude. It necessarily follows from the adoption of this view that the separate title to the minerals is retained in perpetuity and that the statute of limitations does not run against these rights unless there is an actual adverse holding which constitutes an invasion of these particular rights. Such is the unanimous view in all the authorities which hold that there is a right of separation and separate conveyance."

The reservation in the instant case was sufficient to retain in the defendants an undivided one-half interest in fee simple in the minerals, which included novaculite. Nothing appears from the deed or the surrounding circumstances to establish a contrary intent. See: Wood v. Haye, 206 Ark. 892, 175 S.W.2d 189. Defendants action in failing to commence mining operations is not inconsistent with this conclusion, for, as owner in fee simple of an undivided one-half interest, they were under no legal obligation to commence such operations within any particular time. Furthermore, the interest retained could not be affected by adverse possession or occupancy of the surface rights. Grayson-McLeod Lumber Company v. Duke, 160 Ark. 76, 254 S.W. 350; Missouri Pacific R. Co., Thompson, Trustee v. Strohacker, supra.

Under the interest retained in this conveyance, the right of ingress and egress is implied. As stated in Wood v. Haye, supra [206 Ark. 892, 175 S.W.2d 190]:

"The right to enter and to make reasonable use of the land in achieving in a workmanlike way the only result the parties could have intended * * * must be implied from the nature of the matters dealt with. Thornton, 'The Law of Oil and Gas', vol. 1 § 342, states the better rule to be that in case of either a reservation or an exception, a grantor has the right to enter on the surface with all usual necessary appliances, and to remove the mineral without any express authority reserved to that effect. In case of a reservation of minerals, such property descends to the grantor's heirs."

The fact that the right of ingress and egress was not specifically reserved is of no importance once it is determined, as it has been in this case, that defendants are owners in fee of an undivided one-half interest in the minerals, for as appears from the Wood case, supra, the implication of this right is necessary from the nature of the estate reserved. Obviously, the retention of a fee-simple estate in the minerals without the right to remove the same could not have been the intention of the parties.

The deed from the defendants to the Wright, Braughton Lumber Company was duly recorded and was of record at the time of the conveyance by the Wright, Braughton Lumber Company to the plaintiff, Dierks Lumber and Coal Company. Therefore, the fact that the latter deed did not mention the reservation contained in the former is of no consequence, for the reservation was in the direct chain of title and plaintiff was charged with notice thereof. Under these circumstances, it took only what its grantor had to convey, which was an estate in fee simple to the surface rights and an estate in fee simple to an undivided one-half of the mineral rights, including, of course, the novaculite deposits. In this regard, the Court, in Grayson-McLeod Lumber Co. v. Duke, supra, said:

"The conveyance from appellant to Key was, by operation of the statute, in the line of appellee's title, and he was bound to take notice of it, notwithstanding the fact that it was executed prior to the deed from Key to Stark. Appellee had no other chain of title, and he is presumed to have held under it, unless he shows adverse occupancy independent of that chain of title."

And, as stated in Page et al. v. Natural Gas & Fuel Co., 8 Cir., 35 F.2d 462, 464:

"A purchaser is charged with notice of every matter appearing in the deeds forming an essential link in his chain of title, and those of which he would have learned by due inquiry, * * *."

In regard to the contention of the plaintiff that novaculite deposits should be treated in the same manner as limestone deposits, and in accordance with the general rule of excluding limestone deposits from "mineral rights" reservations, the novaculite deposits should be excluded from the reservation in this case, as appears from the above discussion, novaculite has acquired a generally accepted commercial meaning as a "mineral", whereas limestone has not, and the cases excluding limestone from reservations are clearly distinguishable on this ground. Also, it should be mentioned that the contention of plaintiff that defendents acquired merely a one-half interest in the net proceeds of the sale of novaculite from the land is rejected as being inconsistent with the holding of the Court that the defendants acquired a fee-simple estate in an undivided one-half interest of the novaculite deposits.

### Conclusions of Law

1

The Court has jurisdiction of the parties and of the subject matter of this cause.

2

At the time of the execution and delivery of the deed from the defendants to the Wright, Braughton Lumber Company in 1940 (set forth in finding of fact No. 2), Novaculite had acquired a generally accepted commercial meaning as a "mineral", and by reason thereof the substance was included within a "mineral rights" reservation.

3

It was the intention of the parties to the 1940 deed (finding of fact No. 2) to include novaculite within the "mineral rights" reservation of that deed.

4

By virtue of the reservation of the 1940 deed "reserving unto the grantors one-half of the mineral rights therein", an estate in fee simple of an undivided one-half interest in the novaculite deposits on the land conveyed was retained by the grantors.

The nature of the estate possessed by the defendants in the land at the time of the conveyance to the plaintiff's grantors does not appear, and since it does not appear, the interest of the individual defendants in the fee-simple estate in the undivided one-half interest in the novaculite deposits would be determined by the estate that was owned by each of them at the time of the execution of the deed containing the reservation.

5

The right of ingress and egress and the right to perform such operations as are reasonably necessary to remove the novaculite deposits from said land are necessarily implied from the nature of the reservation (conclusion of law No. 4).

6

By virtue of the deed from the Wright, Braughton Lumber Company to the plaintiff, Dierks Lumber and Coal Company, the latter acquired an estate in fee simple to the surface rights and an estate in fee simple to an undivided one-half of the minerals, including the novaculite deposits.

7

A partition in kind or an independent and separate sale of the minerals situated in and upon the land could not be accomplished in an equitable and fair manner without injury to the rights of the parties.

Judgment in accordance with the above, declaring the interests in and the rights of the parties to the novaculite deposits in and upon the land embraced in the 1940 deed should be entered.