**ELLENDER et al. v. HOLLAND et al.**

No. 4572.

Court of Civil Appeals of Texas. Beaumont.

June 9, 1949.

Rehearing Denied June 29, 1949.

distance of 200 varas, and the northern boundary runs east and west a distance, either of 3244 or 3274 varas. The tract for which plaintiffs sue is 1196 varas wide, measured from the western boundary of the survey.

Defendants plead not guilty and the various statutes of limitation, and in the alternative alleged title under these statutes to either of two tracts of land, one included with the other, which lie upon the Wooley Survey east of plaintiffs' eastern fence. This fence is 735 varas from the western boundary of the Wooley Survey, and the larger tract claimed by defendants adjoins this fence and covers the Wooley Survey to the distance of 400 varas eastward. It is the northern part of an enclosure; the northern fence of this enclosure is on or near the northern boundary of the Wooley Survey, and the western and eastern fences of this enclosure extend south of the Wooley Survey (124.7 varas on the east and 126 varas on the west) to a public road, and the southern fence of the enclosure runs along the edge of this road. The smaller tract, included with the larger, has an irregular shape and is also enclosed; its northwestern corner is at the northwestern corner of the larger enclosure claimed by defendants and it extends roughly in a southeasterly direction across the south line of the Wooley Survey to the road.

The Wooley Survey was patented to G. W. Wooley on January 25, 1887, as a pre-emption survey and it was conveyed by the patentee and wife to Mariah E. Williford on August 5, 1887. The said Mariah E. Williford conveyed it to E. S. Holland on June 13, 1901, excepting however two tracts namely, a 25 acre tract conveyed by her to Rice on November 10, 1887, and a 48.3 acre tract conveyed by her to Snell in 1888. At the time of the conveyance to him, E. S. Holland was married to the plaintiff now suing as his widow, Mrs. Rebecca Holland, and it was shown that the remaining plaintiffs (other than formal parties) were the said E. S. Holland's heirs. This evidence, with the evidence referred to hereinafter concerning the location of the Rice and Snell tracts, constituted plaintiffs' proof of title. Plain-

Shivers, Clayton & Kirkland, Port Arthur, for appellant.

V. A. Collins, Livingston, for appellee.

WALKER, Chief Justice.

This proceeding is an action in trespass to try title, brought by the widow and heirs of E. S. Holland against James Ellender and wife, Lois M. Ellender, and W. H. Crosby and S. H. Crosby, to recover the title to and possession of a tract of land occupying the western end of the G. W. Wooley Survey in Tyler County. The Patent describes this survey as containing 115 acres; and according to its field notes, the survey is a rectangle, of which the western boundary runs north and south a

tiffs' also proved that E. S. Holland and his family resided upon the western end of the Wooley Survey from 1901 until Holland's death, which occurred in December, 1933, and that Mrs. Holland, and from time to time various ones among her children, continued to reside there until during 1943. Plaintiffs' proof of possession and claim is discussed hereinafter in more detail.

The defendants S. H. and W. H. Crosby neither proved nor claimed title to any of the land in suit.

Defendants James and Lois M. Ellender proved a deed to the defendant Lois M. Ellender from defendant S. H. Crosby, made during the marriage of said defendants Ellender, which purported to convey a 100 acre tract described as a part of Section 2, B. B. B. & C. Railroad Company Surveys, Block 4, in Tyler County. They also proved other conveyances under which Crosby claimed, but they did not prove a chain of title out of the sovereignty of the soil to that part of Section 2 which may be in conflict with the Wooley Survey. They attempted, instead, to invoke the 5-year and 10-year statutes of limitation, Vernon's Ann.Civ.St. arts. 5509, 5510, by proof of possession and claim. It is not clear to us that Section 2 actually conflicts with the Wooley Survey. There is a great deal of convincing proof that it did not, and the record exhibits no authority for McBride's re-survey of Section 2 in 1919. However, this matter is immaterial. It is plain from S. H. Crosby's deed to Lois M. Ellender and the collateral proof that the tract purportedly conveyed by this deed was in conflict with the Wooley Survey; and, indeed, that the northern boundary of this 100 acre tract coincided with the northern boundary of the Wooley Survey. It is also plain from the metes and bounds description in this deed and from the collateral proof that the larger enclosure of the defendants Ellender follows the northern boundary and the western and eastern boundaries of this 100 acre tract down to the road lying south of the Wooley Survey.

The cause was tried to the court sitting without a jury. The trial court found that defendants Ellender had a limitation title to the smaller enclosure claimed by them and adjudged to them the title to this tract. Title to and possession of the remainder of the tract for which plaintiffs sued was adjudged to plaintiffs. From this judgment defendants James and Lois M. Ellender have appealed. The plaintiffs have not appealed and have not assigned error to that part of the judgment rendered against them in behalf of said defendants Ellender.

Defendants James and Lois M. Ellender have assigned three Points of Error for reversal. These Points need not be stated; all are overruled under and by reason of the following conclusions.

■ (1) Plaintiffs proved a record title from the sovereignty of the soil to the tract for which they sued.

We have summarized plaintiffs' chain of written title. The only incident of this title to which defendants Ellender refer as a matter for reversal is a consequence of the description in Mariah E. Williford's deed to E. S. Holland. That description, so far as relevant, reads: "All that certain tract—situated in Tyler County—containing 115 acres, and known as the G. W. Wooley headright and fully described in a deed from G. W. Wooley and wife to me dated Aug. 5, 1887. (This deed referred to G. W. Wooley's patent and described the survey by metes and bounds as does the patent)—save and except 25 acres deed to J. S. Rice, Nov. 10, 1887, and recorded in Book O, page 450, of the Deed Records, Tyler County, and 48-3/10 acres deed to Samuel David Snell in the year 1888 which deed is not of record and reference is hereby made to said deeds together with the record thereof for description. The interest herein conveyed being 40-7/10 acres or all of my remaining interest in said 115 acre tract."

In order to prove title to the land sued for by them, plaintiffs had to prove that the Rice and Snell tracts were not located within the tract for which they sued. Defendants Ellender say that plaintiffs did not prove the location of either tract. The following evidence is relevant to the question thus made.

The proof of the location of the Rice tract need not be discussed in detail.

Tatum, a surveyor, fixed this tract upon and across the eastern end of the Wooley Survey, the northern boundary measuring 727 varas westward from the northeastern corner of the survey. The deed to Rice was not put in evidence, but no objection was made to Tatum's testimony; and it is apparent that Tatum had before him the field notes in Rice's deed when he made the survey upon which his testimony was based. He certainly thought that he had found the northwestern and northeastern corners of the Rice tract, and from these the balance of the tract could be constructed. Tatum's testimony is not specific in some respects, but the trial court was authorized to infer from his testimony that he had found the Rice tract and that the tract was located where he put it.

Neither the Snell deed nor the field notes to the Snell tract were proved, and plaintiffs relied wholly upon circumstantial evidence to show that this tract lay outside of the tract for which they sued. Tatum constructed this tract from its acreage (48.3 acres, which he took from Mariah E. Williford's deed to E. S. Holland) as lying immediately west of and adjoining the Rice tract and as covering that part of the Wooley Survey lying between the Rice tract and the tract sued for by plaintiffs.

The location of the Snell tract upon the Wooley Survey could be proved by circumstances just as any other fact; and since it may be inferred from Mariah E. Williford's deed that the Snell tract was distinct from the Rice tract, the following circumstances in evidence support Tatum's construction of the Snell tract:

(a) This action was filed on March 14, 1948. It was during the winter of 1932, subsequent to S. H. Crosby's deed, that the defendants Ellender erected the enclosure about the tract which the trial court awarded to them; they did not erect their larger enclosure until April, 1938.

(b) We have referred to the fact that Mariah E. Williford's deed to E. S. Holland was dated June 13, 1901. At this time certain improvements were in existence upon the western end of the Wooley Survey, namely, a dwelling house, an orchard, and a field covering some 15 or 20 acres.

As the plaintiff Chester Holland remembered it, this dwelling was a frame house of 4 or 5 rooms, with a log kitchen. Chester Holland was a son of E. S. Holland and the plaintiff Mrs. Rebecca Holland, and he had lived in this house with his parents. E. S. Holland and his family established their residence in this dwelling during 1901, subsequent to the date of Mariah E. Williford's deed, and they resided there until the house burned, apparently during that same year. E. S. Holland at once erected another dwelling which must have been at least near the site of the burned house (the original house must have been west of the field), and he continued to reside there with his family until his death in December, 1933. His widow, the plaintiff Mrs. Rebecca Holland, resided thereafter in this house, with various members of her family, until during 1943, when she left the place because of ill health.

(c) According to the testimony of the plaintiff Mrs. Rebecca Holland, and of the defendants' witnesses S. H. Crosby and J. O. Foxworth, Mariah E. Williford resided upon the western end of the Wooley Survey on the date of her deed to E. S. Holland and had resided there for an indefinite time prior thereto; and it is to be inferred that her dwelling house was that in which E. S. Holland and family first established their home. Mariah E. Williford was the widow of John Williford, who was the uncle of the plaintiff Mrs. Rebecca Holland. We have referred to the fact that Mrs. Holland was married to E. S. Holland on the date of Mrs. Mariah E. Williford's deed. Under this deed she took a community interest in the land conveyed by said deed. Mrs. Holland testified: "Q. Did she (referring to Mrs. Williford) tell you what part of the survey she sold you? A. On the west end.". Such a statement accords with the location of the Williford and Holland residences, and it identified the part of the survey which Mrs. Williford claimed and thus indicates the land which her successors in title, the Hollands and plaintiffs, claimed after her.

(d) After he took up residence on the western end of the Wooley Survey in 1901, E. S. Holland began to cultivate the field referred to above and he gradually

extended it until it covered about 25 acres. The plaintiff Chester Holland testified to this field being cultivated annually while he resided with his family; he was nine years old when his father established a residence on the property. The plaintiff Mrs. Rebecca Holland said that they farmed the land. The field just mentioned was fenced and the eastern fence, which apparently extended across the Wooley Survey, was the eastern-most of the Holland fences. We have referred to the fact that it stood 735 varas east of the west boundary of the survey.

The dwelling house which E. S. Holland erected after the destruction of his first residence is located near the western boundary of the Wooley survey, evidently between the 25 acre field and the western boundary of the Wooley Survey, evidently the orchard also remained at the time of the trial, and the witness Tatum referred to the existence of a barnyard lot. Since the plaintiff Mrs. Rebecca Holland removed from the property in 1943 plaintiffs have used this property as a pasture and on occasion as a camp.

Prior to the erection in 1932 of the enclosure about the tract awarded the defendants Ellender, that part of the Wooley Survey lying east of Holland's eastern-most fence was covered with timber, was unenclosed and was uninhabited, or at least that part now lying within the larger Ellender enclosure was of this character. Defendant S. H. Crosby testified that he cut the timber off of this land up to the E. S. Holland eastern fence prior to his deed to Lois M. Ellender, but there was testimony to the contrary.

(e) Mariah E. Williford's deed to E. S. Holland was filed and recorded on June 26, 1901; and there is proof other than that afforded by possession and claim under this deed, that E. S. Holland and the plaintiffs after him always claimed the full acreage conveyed to Holland by Mariah E. Williford. The Williford deed refers to the land conveyed thereby as measuring 40.3 acres. The area within the actual possession of E. S. Holland and all plaintiffs, ending at the fence 735 varas East of the western boundary of the Wooley Survey covers no more than 26.04 acres. However, the record exhibits 42 tax certificates showing the payment, prior to delinquency of the taxes annually assessed against E. S. Holland or his widow, Mrs. Rebecca Holland, upon land in the Wooley Survey for each of the years 1902 to 1946, inclusive, excepting the three years 1904, 1930 and 1932. Certificates covering these three years were not put in evidence, but there was proof that all taxes had been paid and there was some testimony from Mrs. Rebecca Holland indicating that all such taxes had been paid regularly. The acreage upon the Wooley Survey referred to in these certificates varies from 40 acres to 47 acres. Thus the assessment covered 40 acres during the years 1942 to 1946, inclusive. It covered 41 acres during 14 years, namely, 1902, 1906, 1909, 1913, 1927, and 1933 to 1941, inclusive. It covered 42 acres (plaintiffs sue for a tract of 42.37 acres) during 20 years, namely, 1907 and 1908, 1910 to 1912, inclusive, 1914 to 1924, inclusive, 1926, 1928, 1929 and 1931. It covered 43 acres during the year 1925, and it covered 47 acres during the years 1903 and 1905. These variances indicate uncertainty as to the exact acreage owned by plaintiffs, and there was some proof, mentioned immediately following, that E. S. Holland did not know, and that plaintiffs did not know the acreage owned by them until plaintiffs had a survey made some 2 or 3 years before the trial now under review.

Neither E. S. Holland nor the plaintiffs protested the making of the Ellender enclosures and the erection of the Ellender improvements until some two years before this cause was tried; but the proof contains an explanation for this which is consistent with the claim of title evidenced by the tax certificates just listed. Neither Mr. Holland nor the plaintiffs had their land surveyed and plaintiffs did not know how far their land extended eastward until they did have a survey made some two or three years before the trial of this cause. Some of the plaintiffs testified in substance that they did not know that the Ellenders were trespassing upon their property. According to testimony of the defendant James Ellender, he did not know he was upon the Wooley Survey un-

til he procured an abstract of title in April, 1938.

(f) We think that it may also be inferred that Mariah E. Williford, E. S. Holland and the plaintiffs all claimed to own a solid block of land which was not divided into two parts by the Snell tract. We have referred to the statement made by Mariah E. Williford to Mrs. Rebecca Holland concerning the land conveyed by her. This statement indicates the land which Mrs. Williford claimed and thus indicates the location of the land which her successors in title would claim. Further, it appears that on December 21, 1944, some three years before this action was filed, the plaintiffs (so we assume; the instrument is not in the record and defendants' counsel introduced it as an admission against interest by the plaintiffs, referring to it as "Holland to Sutton") made an oil and gas lease to one Sutton covering the west 40.7 acres of the Wooley Survey. It may be inferred that this lease was made before plaintiffs had their land surveyed. Chester Holland testified that he did not know how far east the plaintiffs' land extended until the survey was made some two or three years "ago". He testified in June, 1948, and the lease, as stated, was made in December, 1944, more than three years prior to the time he testified. He also testified that he had protested the possession of defendants Ellender about two years "ago". These circumstances indicate that this lease was made before plaintiffs ascertained that the defendants Ellender were occupying land to which they claimed title. Still further, and this seems to us to be a significant circumstance, it seems wholly improbable that Mariah E. Williford would have conveyed to Snell a tract which would divide her property into two parts, separated by the considerable acreage (48.3 acres) conveyed to Snell. A consideration of the shape of the Wooley Survey, the extreme length contrasted with the narrow width, indicates that in all probability Mrs. Williford conveyed to Snell a tract upon the eastern end of her land, thus retaining the western part of the survey where she resided. After all, she only had left some 40 odd acres after she conveyed the Rice and Snell tracts. Why would she cut this into parts, separated by land belonging to others? The record affords no explanation for her doing so; and we ought to give some weight to the improbability that she would subject herself to the inconvenience resulting from a division of the property. The following language in Mansel v. Castles, 93 Tex. 414, at page 416, 55 S.W. 559, 560, concerning the reconstruction of an erroneous description is applicable: "While, therefore, the proposition that the calls of the description in question correct themselves, and show the land intended to be described, is not capable of mathematical demonstration, yet that it is true is reasonably certain. Upon such certainty we act in all the highest concerns of life, and it is sufficient for the purposes of the law."

(g) Tatum testified that he found the north line of the Wooley Survey to be 3297 varas long instead of 3244 varas long (the length referred to in the patent). He assigned two varas of this excess to the Rice tract making the north line of this tract 727 varas long. His reconstruction of the Snell tract left plaintiffs with the 1196 varas which they claimed, and this would give plaintiffs 42.37 acres as distinguished from the 40.7 acres referred to in Mariah E. Williford's deed. If the 41 vara excess necessarily allotted by Tatum to plaintiffs be deducted from this 1196 varas, plaintiffs would be left with a tract 1155 varas long. Such a tract would cover only 40.09 acres, a very slight difference from the 40.7 acres referred to in Mariah E. Williford's deed. The circumstance indicates that Mariah E. Williford did not know of the excess in the Wooley Survey and accounts for the difference between the acreage claimed and that stated in Mariah E. Williford's deed.

(h) There is no proof other than the foregoing matters that Snell either did or did not claim any part of the land for which the plaintiffs now sue; but the circumstances just listed do indicate that he never asserted claim to said land.

These circumstances also tend to prove in a general way that the Rice and Snell tracts were not within the boundaries of the tract for which plaintiffs sued. Plain-

tiffs were not bound to carry their proof any further and it was unnecessary for them to show the location of their tracts as perceiving as they did.

This evidence, showing possession and claim of title in excess of 40 years, apparently acquiesced in by the owners of the Rice and Snell tracts, was sufficient to raise the issue that each of said tracts was located outside of the boundaries of the land for which plaintiffs sue.

■■ (2) Since plaintiffs proved a written title from the sovereignty of the soil to the land for which they sue, and since they had actual possession of a part of this land under this title (all of it of record) at all relevant times, plaintiffs also had constructive possession of that part of their land lying outside of the area within their actual possession, except such land as was within the actual possession of the defendants Ellender. Said defendants had no constructive possession of that part of the land in suit which was covered by their deed from S. H. Crosby. They were confined, so far as the operation of the statutes of limitation was concerned, to such part of that land as they held in actual possession, (and, of course, exclusive possession) for the statutory period. Anderson v. Jackson, 69 Tex. 346, 6 S.W. 575, at page 576: "The controlling principle is that there can be but one constructive possession of the same land, and that, in case of conflict, the seizin and possession of the true owner must prevail over the claim by construction of possession, by one who holds under mere color of title." Woods v. Hull, 90 Tex. 228, 38 S.W. 165; Spencer v. Levy, Tex.Civ. App., 173 S.W. 550.

(3) The defendants Ellender failed, for the reasons now to be stated, to prove a limitation title to that part of the land in suit which lay between their two enclosures.

We have referred to the Ellenders' two enclosures, one within the other. The deed to Lois M. Ellender was dated June 1, 1932. At this time, the land within the Ellender enclosures was covered with timber, was uninhabited and was not enclosed. Said defendants had the tract adjudged to them cleared of timber after this deed was made, and subsequently, during the winter of 1932, enclosed it by a fence which is sometimes referred to in the evidence as "hog proof". In 1933 they erected a substantial dwelling house upon this tract and began to cultivate this tract, and in 1934 they planted an orchard upon this tract. This cultivation was done for said defendants by the witness J. O. Foxworth, and Mr. Foxworth has cultivated this tract annually since that time, growing such crops as corn, potatoes and peas each year. About 1935 said defendants erected a garage upon this tract adjacent to their dwelling, and all of these improvements were maintained from the dates stated down to the time of trial. From the date of S. H. Crosby's deed down to January 1, 1947, the defendant James Ellender was a seaman in the employ of Gulf Oil Corporation and with his wife resided in Port Arthur, Texas. The defendant Lois M. Ellender, Crosby's grantee, was married to the said James Ellender when she took the deed from Crosby; and the said James and Lois M. Ellender made the purchase from Crosby to provide themselves with a permanent home after Mr. Ellender retired from his employment. The dwelling referred to was furnished immediately after it was erected, and Mr. and Mrs. Ellender dwelt in it on occasion during the period prior to January 1, 1947, Mr. Ellender spending week-ends and parts of each of his annual vacations there and Mrs. Ellender spending some time there while Mr. Ellender was at sea. During all of this period prior to January 1, 1947, J. O. Foxworth, who resided elsewhere, seems to have been on and about this tract very often and doubtless watched over the property during the Ellenders' absence. On January 1, 1947, Mr. Ellender retired from his employment with the Gulf, and he and Mrs. Ellender have since made their home upon the property. There seems no question but that defendants Ellender have had actual, exclusive and adverse possession of this tract (we refer to the tract adjudged to them) since the erection of the dwelling house and the beginning of cultivation in 1933, and that they had title to this tract under the 10-

year statute of limitations, whether or not they also had title under the 5-year statute.

The Ellenders' larger enclosure was not erected until April, 1938. There was no prior possession of the land between their two enclosures of which they could take advantage; and since this action was filed in March, 1948, less than 10 years after the erection of the fence in April, 1938, these defendants must have proved title under the 5-year statute to the area between their two enclosures. Plaintiffs question the sufficiency of the Crosby deed to support a title under the 5-year statute, but we need not decide this point. The defendants Ellender could only recover such parts of the land as they held in actual, adverse possession for the statutory period; and their possession, of course, was not adverse unless it was exclusive. Southwestern Lumber Co. v. Allison, Tex. Com.App., 276 S.W. 418; Hardin v. Wanslee Tex.Civ.App., 197 S.W. 1031; Freedman v. Bonner, Tex.Civ.App., 40 S.W. 47.

The evidence raised the issue that defendants Ellender never had exclusive possession of the land between their two enclosures. The larger enclosure was made by a fence of two wires, of which the lower one was placed high enough above the ground to allow cattle, sheep and hogs to pass beneath it. According to the testimony of defendant James Ellender the fence was so constructed in order to allow the passage of such stock. J. O. Foxworth's testimony shows a different original purpose in the mind of Mrs. Ellender, who seems to have had this fence erected by Mr. Foxworth during one of Mr. Ellender's absences; but Mr. Foxworth's testimony does show that this original purpose was abandoned and that the fence was allowed to remain as it was in order that such stock could pass it. Cattle, sheep and hogs did enter this larger enclosure at will, as defendant James Ellender knew; and it may be inferred from Foxworth's testimony that Mrs. Ellender also knew this. No effort to exclude such stock seems to have been made. Plaintiff Edna Overstreet testified that her cow grazed within this enclosure. The plaintiff Mrs. Rebecca Holland said that her cows and sheep passed this fence and entered the enclosure. According to defendant James Ellender, this larger enclosure was intended to make a pasture for horses (he subsequently also said, to prevent trespassers from taking timber) and the area between the two enclosures was actually never used for any purpose other than as a pasture for a horse belonging to J. O. Foxworth and a horse belonging to one Obey Foxworth. Mr. J. O. Foxworth rode behind his horse to work at Ellenders', and when he did not require the use of the animal, turned his horse into this pasture when he arrived at his destination. The pasture was for him only a paddock. Obey Foxworth's horse was placed in this pasture at irregular intervals not definitely identified in the proof. The Ellenders made no other use of this larger enclosure. They owned no livestock and they apparently never cut any timber upon the Wooley Survey except when they cleared the tract adjudged to them. We have referred to the fact that Mrs. Ellender had J. O. Foxworth erect this fence; and it appears that Mrs. Ellender secured permission from the plaintiff Mrs. Rebecca Holland to attach this fence to the easternmost of the Holland fences. According to Mrs. Holland, Mrs. Ellender told her that this fence was being erected to stop trespassers from crossing the land on the way to a creek. Mrs. Holland testified: "Q. You told her you would not care? A. I told her it would be all right; my stock could go under her fence. It was high from the ground; my sheep and cows could go under it. Q. Your sheep and cows did go under it? A. Yes, sir."

This proof shows that the Ellenders used the land lying between the two enclosures for one purpose, and that with their own knowledge, other members of the public (including at least two of the plaintiffs) used it for other purposes. It does not appear as a matter of law that plaintiffs were ever prevented from making any use of this land which they desired to make or that plaintiffs purported to be or to act as licensees of the Ellenders. These coin-

cidental uses of the land between the El-
lender enclosures show exclusive posses-
sion by no one.

These comments dispose of the appeal.
We may agree with appellants that there
was proof on many points to the contrary
of that stated above, but this conflict in
proof is immaterial. The Points of Error
are overruled and the judgment of the
trial court is affirmed.