SUN OPERATING LIMITED
PARTNERSHIP,
Appellant,

v.

Wayland W. OATMAN, Appellee.

No. 04–93–00634–CV.

Court of Appeals of Texas,
San Antonio.

March 8, 1995.

Rehearing Overruled Oct. 2, 1995.

---

Stuart C. Hollimon, Royal H. Brin, Jr., Kenneth S. Beat, Strasburger & Price, L.L.P., Dallas, for Appellant.

Wesley G. Ritchie, McCall & O'Connell, L.L.P., Austin, Joe A. Osborn, Kendall, Randle, Finch & Osborn, Austin, for Appellee.

Before CHAPA, C.J., and LOPEZ, and STONE, JJ.

## OPINION

STONE, Justice.

This is a suit to determine the respective rights of the parties regarding an undivided one-eighth mineral interest in certain property in Dimmit and Zavala Counties, Texas. Each of the parties trace their title back to Clara Whiting Floyd, deceased ("Clara"), who owned the subject one-eighth interest at the time of her death in 1935. Wayland W. Oatman ("Oatman") claims title under a 1974 receiver's lease granted to him on behalf of Clara's unknown heirs. Sun Operating Limited Partnership ("Sun") claims title under a 1970 oil, gas and mineral lease from Jennie Floyd Hayden ("Jennie"), the step-daughter of Clara.

Oatman filed suit claiming title under the receiver's lease, and alternatively, claiming to have acquired title by adverse possession. Oatman also sought to recover from Sun as operator of a well on the property, the net proceeds of production attributable to the subject interest, plus attorney's fees and interest. Sun filed a counterclaim asserting title under the earlier oil and gas lease from Jennie.

Sun and Oatman both filed motions for summary judgment on the question of title to Clara's one-eighth interest for the depths below 5,532 feet. The trial court granted Oatman's motion and denied Sun's motion, thereby upholding Oatman's claim of title. Oatman had also filed suit for conversion, asking for the gross proceeds of production plus exemplary damages. Summary judgment was granted for Sun on this issue and Oatman does not appeal the trial court's decision.

The parties stipulated as to the net proceeds attributable to the one-eighth interest and the amount, but not the recoverability, of Oatman's attorney's fees. The parties also stipulated that no matter who was deemed to be the holder of a valid lease, the lessors, who are Jennie's heirs, will receive a three-sixteenths royalty from the proceeds of production for the disputed one-eighth interest, even though the receiver's lease only provides for a one-eighth royalty.

Following a bench trial on prejudgment interest and recoverability of attorney's fees, the trial court entered judgment declaring Oatman the owner of the one-eighth working interest and awarding Oatman the net proceeds of one-eighth of production, together with prejudgment interest, post-judgment interest at ten percent, attorney's fees and costs. Sun presents seven points of error on appeal. We affirm in part and reverse and render in part.

## FACTUAL BACKGROUND

In 1931 Jennie and Clara purchased an undivided one-fourth interest in the property in question at a partition sale. The interest that is at issue in this case is the one-eighth mineral interest that was Clara's half of this undivided one-fourth interest.

Clara died in 1935 and left her one-eighth interest to Jennie under a will probated in Arkansas. Oatman and Sun were not aware of the will or the probate proceedings. Jennie also claimed that she was unaware that she owned Clara's one-eighth interest upon Clara's death, although she served as executrix of Clara's will. For some unexplained reason, Jennie signed an affidavit prepared by Sun which said that Clara had died intestate, without any known heirs. Unfortunately, Jennie passed away before trial so this mystery remains unsolved.

In 1970 Jennie and other surface owners executed an oil, gas and mineral lease (the "Sun Lease"), leasing to Sun their interest in the land. Sun claims title to Clara's one-eighth interest under this lease arguing that the Sun Lease conveyed all of Jennie's interest in the land, even though no one realized that Jennie owned not only her own one-eighth interest, but also Clara's one-eighth interest.

In 1973 Sun assigned the Sun Lease to Oatman as to all mineral rights to a depth of

5,532 feet, reserving a one-sixteenth overriding royalty, and retaining all rights under the lease to depths below 5,532 feet (the "Sun–Oatman Agreement"). In the instant litigation Clara's one-eighth interest is at issue only as to these retained rights below 5,532 feet. At the time of the Sun–Oatman Agreement, Oatman and Sun were unaware that Clara had left a will. Sun provided Oatman with title opinions showing that its lease covered only seven-eighths of the property. It was Sun that suggested Oatman obtain a receiver's lease from Clara's unknown heirs for the remaining one-eighth interest. The summary judgment record clearly reveals that Sun did not claim ownership of Clara's outstanding one-eighth interest.

In 1974 Oatman determined that Clara had died, but was still unaware of the will that had been probated in Arkansas devising Clara's interest to Jennie. He believed that Clara had died intestate, and that her interest existed as an outstanding unleased one-eighth interest owned by Clara's unknown heirs. In order to gain a lease on the subject one-eighth interest, and in accordance with Sun's suggestion, in 1974 Oatman filed suit in Dimmit County seeking the appointment of a receiver for Clara's unknown heirs. A receiver was appointed, and on December 16, 1974, the receiver executed an oil, gas and mineral lease to Oatman (the "Receiver's Lease"). The Receiver's Lease, which is the source of the interest that Oatman claims, covers Clara's one-eighth interest. Sun was given copies of both Oatman's application for appointment of the receiver and the Receiver's Lease.

In 1975 Oatman drilled and completed a producing well on the subject tract. The bottom perforation of the well was within the shallow zone assigned to Oatman by Sun. Oatman paid Sun a royalty based on the seven-eighths interest in the land that both parties believed Sun owned. Sun had not made a formal claim for the royalty on the additional one-eighth interest, although later in 1991 it asked the purchaser of production from the subject property to suspend payment of royalties to Oatman deriving from the disputed interest.

In late 1976, two years after Oatman obtained the Receiver's Lease, Jennie contacted Oatman and told him of Clara's will. A certified copy of the will was then filed in 1977 in the Dimmit County deed records and with the court in the receivership proceeding. The court discharged the receiver, terminated the receivership proceeding, and ordered payment to Jennie of any accrued royalties under the Receiver's Lease. The Receiver's Lease was not terminated, however, and Oatman continued to pay Jennie royalties under this lease. Sun was notified of this will shortly after it was filed of record.

In 1988, long after it was aware of the existence and terms of Clara's will, Sun executed a division order indicating that it had the right to receive a one-sixteenth royalty for seven-eighths of the land under the Sun–Oatman Agreement. In other words, eleven years after learning of Clara's will, Sun continued to conduct business based on its leasehold interest covering seven-eights of the subject property, not covering a full eighteights. In December 1989 Sun contacted Oatman to discuss the possibility of Oatman assigning his rights to the remaining one-eighth interest to Sun so that it could drill a well below 5,532 feet. One month later Sun changed its position and asserted that it already owned the one-eighth interest in question.

In 1990 Sun drilled the first of two wells more than 5,532 feet beneath the surface. Upon learning of these wells Oatman demanded that Sun account to him for one-eighth of the net proceeds of production. When Sun rejected Oatman's demand for an accounting, Oatman filed this suit.

## SUMMARY JUDGMENT STANDARD

When both parties move for summary judgment each party must carry its own burden of establishing a right to judgment. Neither can prevail solely because the other party failed to discharge its burden. *Sunbelt Savs., F.S.B. v. Bank One, Tex., N.A.,* 816 S.W.2d 106, 108 (Tex.App.—Dallas 1991), *rev'd on other grounds,* 824 S.W.2d 557 (Tex.1992); *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 549 (Tex.App.— Dallas 1990, writ denied). When both parties move for summary judgment and one is granted and the other denied, the appellate

court will determine all questions presented by both motions if the losing party challenges both summary judgment rulings on appeal. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988).

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311. When, as in this case, a summary judgment does not state the specific grounds upon which it is granted, the non-movant must negate each possible ground alleged by the movant. *Woomer v. City of Galveston,* 765 S.W.2d 836, 837–38 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

### THE CLAIMS OF THE PARTIES

In its first four points of error Sun complains of the trial court's action in granting Oatman's motion for summary judgment (thereby upholding Oatman's claim of title), in denying Sun's motion for partial summary judgment (thereby denying Sun's claim of title), and in awarding certain damages and attorney's fees to Oatman (the award of which was dependent upon the validity of Oatman's claim of title). Sun reasons that its claim of title is superior because Sun has earlier title from the parties' common source, Clara. In this regard Sun argues that Clara's one-eighth interest in the subject property passed to Jennie upon Clara's death in 1935, and this one-eighth interest then was passed to Sun by Jennie in 1970 when she executed the Sun Lease. Sun claims that this transfer of Clara's interest occurred despite the fact that none of the parties to the Sun Lease were aware of Clara's will when Jennie executed the Sun Lease. Sun further contends that the 1974 Receiver's Lease passed nothing to Oatman because Clara's unknown heirs possessed no interest in the subject property since it had already passed to Jennie under Clara's will. Finally, Sun concludes that it was not divested of its superior title by the 1974 Receiver's Lease executed in favor of Oatman because it was not made a party to the receivership proceeding.

Oatman asserts ownership via the 1974 Receiver's Lease, which Oatman claims he acquired without knowledge of Clara's will. Oatman thus contends he is a bona fide purchaser without knowledge of any prior claims. He contends that Sun's claim of superior title is barred by ratification, waiver and estoppel. He further asserts that proof of the Arkansas probate of Clara's will has never been furnished in accordance with the Texas Probate Code, thereby defeating Sun's claim under the will. Alternatively, Oatman claims title by adverse possession.

### THE COMMON SOURCE DOCTRINE

In its motion Sun argued it held superior title under the common source doctrine contending that where competing claims of title are traced back to a common source, the earlier title emanating from that common source is the better title and must be given prevailing effect. 61 TEX.JUR 3d *Quieting Title & Determining Adverse Claims* § 78 (1988). Sun contends that its title is superior because while Sun and Oatman both trace title back to Clara, Sun claims under the earlier 1970 Sun Lease from Clara's devisee Jennie, and Oatman claims under the 1974 Receiver's Lease issued on behalf of Clara's unknown heirs. Sun further argues that title vested in Jennie when her step-mother Clara died in 1935 and her will was probated in Arkansas.

> [T]itle of a devisee under a foreign will duly probated, like that under a domestic will, becomes effective, or vests, as of the date of the testator's death, the probate in the foreign state and the record in Texas being "legal formalities required to evidence and give full effect to that right."

*Bruni v. Vidaurri,* 140 Tex. 138, 158, 166 S.W.2d 81, 93 (1942). In *Bruni* the court ruled that a deed for land in Zapata County

executed by the devisee in 1928 was valid, because title had vested in the devisee upon the owner's death in 1889 and the will had been duly probated in Mexico, even though the will was not placed in the records of Zapata County until 1930. *Bruni,* 166 S.W.2d at 92–93. Sun claims that under *Bruni,* the 1970 lease to Sun was valid, even though the will was not filed in Dimmit County until 1977. Finally, Sun contends that Clara's interest passed upon her death to her devisee Jennie in 1935, thus Clara's unknown heirs did not own anything to lease to Oatman.

■ Sun's claim of superior title fails for two reasons. First, an exception to the "earlier in time" rule of the common source doctrine exists when the evidence shows that the holder of the later title acquired it without notice of the existing interest. 61 TEX.JUR 3d QUIETING TITLE & DETERMINING ADVERSE CLAIMS at § 79. This rule has long been recognized by Texas courts. *See Mills v. Herndon,* 60 Tex. 353, 356 (1883) (conveyances by devisees are cured by a subsequent filing and recording of will if the rights of innocent third parties are not affected); *March v. Huyter,* 50 Tex. 243, 253–54 (1878) (title of devisee might not affect rights of subsequent purchaser without notice of unprobated will); *Long v. Shelton,* 155 S.W. 945 (Tex.Civ.App.—Texarkana 1913, writ ref'd) (vesting of title under foreign will is subject to rights of supervening purchasers without notice). There is nothing in the *Bruni* decision to indicate that the Supreme Court overruled this exception to the earlier in time rule.

Sun acknowledges that such later title is accorded priority over the earlier one, but does not agree Oatman has the standing of an innocent purchaser without notice of the existing will. Specifically, Sun contends that prior to Oatman's acquisition of title through Clara's heirs-at-law in the 1974 receivership proceeding, Oatman had already acquired title through Clara's devisee Jennie under the 1973 assignment of the Sun Lease in which Jennie was a lessor. According to Sun, Oatman thus could not have been a bona fide purchaser under the 1974 Receiver's Lease because the will was already in his chain of title and at the time of the receivership proceeding he was charged with notice of Clara's will as a matter of law.

■ A bona fide purchaser is one who buys property in good faith for valuable consideration and without actual or constructive notice of outstanding claims. *Equitable Trust Co. v. Roland,* 721 S.W.2d 530, 534 (Tex.App.—Corpus Christi 1986, writ history). Specifically:

> The law in Texas is that every vendee of land is charged with knowledge of all facts appearing in the chain of title through which he claims that would place a reasonably prudent person on inquiry as to the rights of other parties in the property conveyed.

*Blocker v. Davis,* 241 S.W.2d 698, 700 (Tex. Civ.App.—Fort Worth 1951, writ ref'd n.r.e.). Thus, under the general rule, when a will has been probated, the title of the devisee relates back to the death of the testator and becomes effective from that date. The same legal effect should be given a foreign will, subject, however, to the rights of supervening purchasers without notice following reasonable inquiry. *Long v. Shelton, supra,* 155 S.W. at 948.

In his application for the appointment of a receiver, Oatman concluded, "From the investigation made by Plaintiff Applicant, Clara Whiting Floyd died intestate in Forrest City, Arkansas." He further stated that an extensive search was undertaken to contact all persons related to Clara, none of whom resided in Texas. Sun does not allege that Oatman failed to use diligence in his investigation. Rather, Sun simply alleges that Oatman should be charged with knowledge of Clara's will because it is in Oatman's chain of title.

It is disingenuous for Sun to argue that Oatman had sufficient information to put a reasonably prudent person on notice of the will, when Sun itself admits that it was unable to discover the will and considered the one-eighth interest in question as an outstanding claim held by the unknown heirs of Clara. Further, the summary judgment record reveals that in the 1970 Sun Lease, everyone, including Jennie and Sun, thought that Jennie was only leasing her original one-eighth interest. The will was not in the

chain of title for Jennie's one-eighth. Jennie had acquired it under a Sheriff's deed at a partition sale. Since no one thought that the remaining one-eighth interest belonged to Jennie and was included in the Sun Lease, Oatman cannot be held to realize that she owned it either. Both Sun and Jennie represented to Oatman that the other one-eighth was not owned by anyone other than Clara's unknown heirs. In fact, it was Sun who suggested that Oatman obtain a lease for Clara's one-eighth. Sun had Jennie sign an affidavit of heirship saying that Clara died intestate. Sun provided Oatman with title opinions showing that Sun only owned seven-eighths, and suggested that Oatman obtain a Receiver's Lease for the outstanding one-eighth interest. As late as December 1989, Sun still believed Oatman owned Clara's one-eighth and contacted him to see under what terms he would convey his interest to Sun for the depths below 5,532 feet. It would be inequitable to impose constructive knowledge upon Oatman that Sun owned the remaining one-eighth when it was Sun that told Oatman it did not own the interest.

Oatman attempted in good faith to obtain a lease for the remaining one-eighth. Both Oatman and Sun conducted diligent searches and could not find Clara's will or any of her heirs. The fact that Oatman himself helped Jennie record the will, and obtain the accrued royalties once the will was discovered in 1977, is further evidence of Oatman's good faith.

 At the 1977 proceeding to dissolve the receivership Jennie was a party, and could have had Oatman's lease dissolved then if she desired. Therefore, even if the unknown heirs of Clara did not have anything to give Oatman, Jennie did, and by not objecting to Oatman's lease, she effectively ratified it.

> [W]here parties by their conduct and action recognize contracts as subsisting and binding, they thereby affirm the contracts after acquiring knowledge of the facts which entitled them to rescind. This is the equivalent of a ratification of the contract.

*Spellman v. American Universal Inv. Co.*, 687 S.W.2d 27, 29 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Payne v. Baldock*, 287 S.W.2d 507, 509 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.). After Jennie ratified

Oatman's lease, everyone thought Oatman owned the one-eighth interest, until Sun discovered a large gas deposit thirteen years later.

 Sun also ratified the Receiver's Lease when it accepted royalty payments from Oatman for only seven-eighths of the land and executed Division Orders reflecting that it was entitled to royalties based on only a seven-eighths interest. Sun argues that these actions mean nothing since division orders are revocable. However, conduct which in effect recognizes the existence of a contract (the Receiver's Lease) when all relevant facts are known, is a ratification of that contract. *See Spellman*, 687 S.W.2d at 30 ("The acceptance of the payments recognized the lease as subsisting and binding; the effect is to waive or abandon any right of rescission or of attack upon the initial invalidity, if any, of the lease. Thus, the acceptance of the royalty checks by appellants with knowledge that they were in payment for royalty from the mineral deed, when considered with the fact that they knew of the Division Orders, constituted a ratification of the action of appellees."); *see also, Gulf Oil Corp. v. Marathon Oil Co.*, 137 Tex. 59, 152 S.W.2d 711, 721 (1941); *Yelderman v. McCarthy*, 474 S.W.2d 781, 784 (Tex.Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.).

Sun also argues that because its division orders do not specifically refer to the Receiver's Lease, they cannot be used as evidence of ratification. This very same argument was rejected by the court in *Spellman* when there is also conduct, such as acceptance of royalty payments, which shows ratification of the lease. The court distinguished this situation from one where there is no other conduct implying ratification, and thus the party is relying solely upon a division order to revive an *expired* lease. *Spellman*, 687 S.W.2d at 30.

Because Oatman was relying upon factual assertions made by the very entity that is now trying to disavow them years later, and because Sun has failed to present any evidence that any party knew or believed Clara's one-eighth was included in the Sun Lease, we find that Oatman did not have

constructive knowledge of the will and was a bona fide purchaser. Therefore, Oatman's title is superior.

## ADVERSE POSSESSION

 Oatman also claims to have adversely possessed the one-eighth mineral interest as to all depths by drilling in 1975 under his Receiver's Lease, even though he had permission under the Sun–Oatman Agreement to drill at this depth. He claims that Sun was put on notice of his adverse possession since he only paid Sun the reserved royalty multiplied by seven-eighths, instead of eight-eighths, as the Sun–Oatman Agreement stated. The real question is whether Oatman went far enough beyond his authority to put Sun on sufficient notice that he was *adversely* possessing the other one-eighth.

 When the surface is separated from the minerals, adverse possession of mineral rights is accomplished by drilling and producing for the statutory period of time. *Webb v. British Am. Oil Prod. Co.,* 281 S.W.2d 726, 734 (Tex.Civ.App.—Eastland 1955, writ ref'd n.r.e.). The five year adverse possession statute mandates that a person must (1) cultivate, use, or enjoy the property for five continuous years, (2) pay applicable taxes on the property; and (3) claim the property under a duly registered deed. Tex. Civ.Prac. & Rem.Code Ann. § 16.025 (Vernon 1986). The ten year statute requires only that a person must cultivate, use, or enjoy the property for ten continuous years. Tex. Civ.Prac. & Rem.Code Ann. § 16.026 (Vernon 1986 & Supp.1994). The recorded Receiver's Lease is the equivalent of a deed for purposes of these statutes. *Allied Chemical Corp. v. Kadane & Sons,* 373 S.W.2d 778, 780 (Tex.Civ.App.—Eastland 1963, no writ). Oatman paid the taxes for this one-eighth interest on the revenue he received from the production of minerals on his well. Sun paid taxes on only a seven-eighths interest from 1975 to 1990.

 To adversely possess land the trespasser must take exclusive possession, which is sufficiently adverse to put the owner on notice of the trespasser's claim. Sun was put on notice that Oatman claimed the one-eighth interest because once he obtained the Receiver's Lease Oatman at all times exercised control over that one-eighth, and enjoyed the benefits of it. In 1973, when they entered into the Sun–Oatman Agreement, both parties assumed that the one-eighth belonged to Clara's unknown heirs. In 1974, Oatman obtained the Receiver's Lease for this interest and sent Sun notice. The Receiver's Lease described a lease with no depth limitation. This lease was recorded by Oatman in 1974 in Dimmit County. One cannot give much more notice than to obtain a court order declaring them to be the title holder, file it in the deed records, and send it to the adverse party. In 1975, Oatman drilled a well which produced continuously through trial. Oatman began paying Sun the reserved royalty multiplied by Sun's presumed seven-eighths interest, even though the Sun–Oatman Agreement called for Sun to receive the royalty multiplied by eight-eighths. This repudiation of Sun's right to the rest of the royalty started the statute of limitations running. *See Junkermann v. Carruth,* 620 S.W.2d 165, 167 (Tex.Civ.App.—Corpus Christi 1981, no writ).

Even if we assume that Sun did not have sufficient notice of its own rights until the will was discovered and a copy provided to Sun in 1977, Oatman certainly started adversely possessing against Sun at that time. As of 1977, both parties were aware of the terms of Clara's will, and both parties knew the provisions of the Sun Lease. Therefore, as Sun itself argues, each of the parties had notice of the provisions of the will as of 1977. If Sun believed that it truly had been leased Jennie's entire interest, it should have asserted its rights to the proceeds for eight-eighths. Instead, Sun said nothing and accepted the payments for a seven-eighths interest. Sun reaffirmed its belief that this was the amount it was entitled to in its division order in 1988. The first time Sun disputed Oatman's claim to the one-eighth was in 1990 when Oatman demanded one-eighth of the net profits from Sun's well, more than ten years after Clara's will was discovered.

Sun cites this court to cases which state that a severance may be effected as to different strata of the Earth and as to different minerals. *See Carter Oil Co. v. McCasland,* 190 F.2d 887 (10th Cir.1951) (severance of

title at 4,000 feet); *Shell Oil Co. v. Manley Oil Corp.*, 124 F.2d 714, 715 (7th Cir.1941) (The right of severance extends "to as many strata as there may be in the subsurface"); *Cain v. Neumann*, 316 S.W.2d 915 (Tex.Civ. App.—San Antonio 1958, no writ); *Yoss v. Markley*, 68 N.E.2d 399 (Ohio C.P.1946) ("Each stratum or kind of minerals in turn may be the subject of a grant, and there may be as many different owners of the minerals as there are different kinds of strata."). Sun claims that the Sun–Oatman Agreement effected a severance at 5,532 feet, and therefore Oatman never exercised control over the portion in dispute because his well did not reach below 5,532 feet. The cases cited by Sun are distinguishable because they do not deal with adverse possession, nor do they involve someone claiming under another deed which purported to convey an interest unlimited as to depth.

 Sun contends that Oatman adversely possessed only the one-eighth interest for depths above 5,532 feet because the Sun–Oatman Agreement effected a severance of the land. This would be contrary to established law, however, that an adverse possessor claiming title under a registered deed is considered to have constructive possession of *all* the land within the boundaries of his deed not under another's actual possession, if he has actual possession of any part of those lands. *Chase v. Faulk*, 297 S.W.2d 341, 344 (Tex.Civ.App.—El Paso 1956, writ ref'd n.r.e.); *Ellender v. Holland*, 221 S.W.2d 990, 996 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.); 2 Tex.Jur.3d., Adverse Possession, § 164.

> Peaceable possession of real property held under a duly registered deed or other memorandum of title that fixes the boundaries of the possessor's claim extends to the boundaries specified in the instrument.

Tex.Civ.Prac. & Rem.Code Ann. § 16.026(c) (Vernon Supp.1994). Oatman claimed title under the duly registered 1974 Receiver's Lease which covered all depths, and he drilled a well which produced minerals continuously for the statutory period of time, withholding one-eighth of the royalties. Oatman had already adversely possessed the one-eighth interest as to all depths under both the five and ten year statutes before Sun drilled its well in 1990.

*Chase* and *Ellender* both deal with adverse possession of the surface because normally one cannot adversely possess minerals. However, we see no reason why this rule should not extend to the present case where Oatman held title to ⅛th of all the minerals under a valid, recorded deed, and did take actual physical possession of the minerals by drilling, without complaint by Sun after it received notice.

In addition, even if Sun created a severance of the minerals at 5,532 feet in the 1973 Sun–Oatman Agreement, everyone believed that this pertained to only seven-eighths of the total interest. The actions of both parties are consistent with this fact. Therefore, if Sun did effectively sever the estate in the Sun–Oatman Agreement, it would only apply to the seven-eighths interest in the original Sun Lease, and the outstanding one-eighth would not be affected. Here, Oatman was claiming under the Receiver's Lease which gave him rights as to all depths for the one-eighth interest. Therefore, Oatman has adversely possessed all of the land described in his Receiver's Lease under section 16.026(c). Sun was at all times given full notice that Oatman was claiming title to the full one-eighth under the Receiver's Lease.

By 1987, Oatman had adversely possessed the entire one-eighth mineral interest against Sun, no matter under which statute his actions are considered, and even giving Sun the benefit of the doubt as to when it had sufficient notice. It should be noted, however, that Oatman was not adversely possessing against either Jennie or her heirs because they had an agreement regarding this one-eighth under the Receiver's Lease and because Oatman admits his intentions were not adverse to theirs. Sun's first four points of error are overruled.

## PREJUDGMENT INTEREST

 Sun complains that the trial court erred in awarding Oatman prejudgment interest, because Sun is exempt from paying interest for withholding payment when there is a dispute concerning title that would affect distribution of payments or a reasonable doubt that the payee has clear title to the interest in the proceeds of production. Tex.

NAT.RES.CODE ANN. § 91.402(b)(1) & (2)(B) (Vernon 1993); *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.*, 794 S.W.2d 442, 450 (Tex.App.—Corpus Christi 1990, writ denied). Oatman claims that Oryx Energy Co., which managed the well, was the "payor" for purposes of this statute, and therefore Sun was not entitled to rely upon section 91.402. Sun presented summary judgment evidence that Oryx was the managing general partner of Sun. Oatman does not cite this court to any controverting evidence, and so the trial court should not have disregarded this evidence, or at least should have granted Sun's motion to reopen evidence on this issue. Tex.R.Civ.P. 270; *Word of Faith World Outreach Center Church, Inc. v. Oechsner*, 669 S.W.2d 364, 366–67 (Tex.App.—Dallas 1984, no writ); *Hill v. Melton*, 311 S.W.2d 496, 500 (Tex.Civ.App.—Dallas 1958, writ dism'd); *Harrison v. Bailey*, 260 S.W.2d 702, 705 (Tex.Civ.App.—Eastland 1953, no writ). Appellant's fifth and sixth points of error are sustained. In view of this holding, there is no need for this Court to address Appellant's seventh point of error.

Based on the foregoing reasons, the judgment of the trial court awarding Oatman $112,207.37 in prejudgment interest is reversed and rendered that Oatman take nothing on his claim for prejudgment interest. In all other regards the judgment of the trial court is affirmed.